759 N.W.2d 100 (2009)
276 Neb. 1034
Michael P. WALSH, appellant,
v.
STATE of Nebraska ex rel. State Board of Public Accountancy of the State of Nebraska, appellee.
No. S-07-1083.
Supreme Court of Nebraska.
January 9, 2009.
*103 John P. Raynor, of Raynor, Rensch & Pfeiffer, Omaha, for appellant.
Robert T. Grimit and John J. Heieck, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., Lincoln, for appellee.
Noel L. Allen, of Allen & Pinnix, P.A., Raleigh, for amicus curiae National Association of State Boards of Accountancy.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
WRIGHT, J.

I. NATURE OF CASE
The Nebraska State Board of Public Accountancy (Board) imposed sanctions on Michael P. Walsh for violation of its rules. The Board found that Walsh improperly advertised that he was a certified public accountant (CPA) without using a disclaimer to indicate that he was an "inactive registrant." The Board reprimanded Walsh and placed him on probation for 3 years, with the condition that he include the disclaimer along with any use of the CPA designation. The Board also found that Walsh impersonated his brother-in-law to obtain insurance information, an act which qualified as a "discreditable act" *104 under the Board's rules. The Board reprimanded Walsh and placed him on probation for a concurrent term of 3 months. The Lancaster County District Court affirmed the order of the Board. Walsh appeals.

II. SCOPE OF REVIEW
A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Nothnagel v. Neth, 276 Neb. 95, 752 N.W.2d 149 (2008).

III. FACTS
Walsh became an active CPA in Nebraska in 1977 and continued in that status through June 30, 2002. Walsh did not meet the requirements for continuing education, and he applied for and was issued an inactive permit for the period of July 1, 2002, to June 30, 2004. He continued to request and receive biennial inactive permits through June 30, 2008.
In 2004, the Board was advised that Walsh was violating its rules and regulations by advertising that he was a CPA without including a disclaimer that he was an inactive registrant. The yellow pages of a 2004 Omaha-area telephone directory included a listing for "CPA MICHAEL P WALSH" under "Accountants-Certified Public." The Board issued a "cease and desist notice" to Walsh, ordering him to immediately stop use of the CPA designation in any manner. He was directed to cancel the listing for future telephone directories and to send the Board a copy of a certified letter and return receipt to prove that he asked the telephone directory company to cancel the listing.
In response, Walsh allegedly sent a letter on February 23, 2005, to the telephone directory company requesting that he no longer be listed under the CPA classification in the yellow pages. A copy of the letter was received by the Board on March 1. Notwithstanding the letter, Walsh's listing continued and was renewed in 2005 and 2006. Walsh paid the bill for the listing each year.
In July 2005, the Board received a letter from Stephen F. Teiper, who was Walsh's brother-in-law, which accused Walsh of impersonating Teiper on the telephone to obtain financial information from Teiper's insurance company. According to Teiper, Walsh identified himself as Teiper and gave the insurance company Teiper's Social Security number. Walsh admitted that he had impersonated Teiper in order to obtain financial information about Teiper's accounts.
The Board filed a complaint against Walsh on March 6, 2006, for violation of the Board's rules and regulations in two respects. The complaint alleged that Walsh (1) held himself out to the public as a permitholder when he advertised under the "Accountants-Certified Public" category in the telephone directory without including the disclaimer that he was inactive and (2) engaged in a discreditable act when he impersonated Teiper to obtain information from his insurance company.
At a hearing before the Board, Walsh acknowledged that he continued to renew his listing in the CPA section of the telephone directory without the disclaimer on advice of counsel that he was permitted to do so, even though he was inactive. Walsh acknowledged that he had intentionally *105 and willfully ignored the Board's policy requiring use of the disclaimer in advertising.
Walsh also acknowledged that he had identified himself to the insurance company as Teiper. Walsh said that Teiper had provided his Social Security number and date of birth to allow Walsh to obtain information from the insurance company on Teiper's behalf.
The Board found that Walsh had intentionally and with knowledge of the Board's rules and regulations violated the rules by using "Certified Public Accountant" or "CPA" without the disclaimer indicating that he was an inactive registrant. As a sanction, the Board reprimanded Walsh and placed him on probation for 3 years with the condition that he cease using "Certified Public Accountant" or "CPA" within 30 days on his business cards, letterhead, advertising, tax returns, checks, or other written material provided to the public, unless it was also accompanied with the disclaimer "inactive registrant."
The Board also found that Walsh had committed a discreditable act when he lied to the insurance company and affirmatively represented that he was Teiper. The Board concluded that Walsh's conduct in impersonating a third party to secure financial information about that third party was reprehensible and reflected adversely on Walsh's fitness to engage in the practice of public accountancy. As a sanction, the Board reprimanded Walsh and placed him on probation for a term of 3 months to run concurrently to the previous sanction. He was also ordered to obtain 4 hours of continuing education in ethics by December 22, 2006. The Board ordered Walsh to pay costs and expenses not to exceed $3,000 within 6 months.
Walsh appealed to the Lancaster County District Court, which affirmed the Board's order in its entirety.

IV. ASSIGNMENTS OF ERROR
Walsh assigns the following errors, which we have consolidated and restated: Concerning the charge that he violated the Board's rules by including the CPA designation in his advertising, Walsh claims that the district court and the Board erred (1) in finding that the Board had subject matter jurisdiction over Walsh's tax return business, (2) in not finding that the Board's rules enlarge and modify the enabling statutes, (3) in not finding that the Board's actions violated Walsh's due process rights when the Board found he violated a rule not named in the complaint, and (4) in not finding the requirement of using the disclaimer "inactive registrant" violates Walsh's First Amendment right to free speech under Central Hudson Gas & Elec. v. Public Serv. Comm'n, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).
Concerning the discreditable acts charge, Walsh claims that the district court and the Board erred (1) in not finding that 288 Neb. Admin. Code, ch. 5, § 007.01 (2005), is unconstitutionally vague; (2) in finding there was a sufficient nexus between the practice of public accountancy and Walsh's behavior for the Board to discipline him; and (3) in not dismissing the discreditable acts charge when the Board denied Walsh his "Seventh Amendment" right to confront his accuser.

V. ANALYSIS
We begin with a review of the Public Accountancy Act, Neb.Rev.Stat. §§ 1-105 to 1-171 (Reissue 2007) (Act), and the Board's rules and regulations, which govern the practice of public accountancy in Nebraska. The Board's purpose is "to protect the welfare of the citizens of the state by assuring the competency of persons *106 regulated" under the Act through administration of CPA examinations, issuance of certificates and permits, and monitoring the requirements for continued issuance of certificates and permits. § 1-105.01. The Board is also authorized to discipline the holders of certificates and permits who fail to comply with the technical or ethical standards of the public accountancy profession. Zwygart v. State, 273 Neb. 406, 730 N.W.2d 103 (2007), citing § 1-105.01. The Board has the authority to adopt and promulgate "rules and regulations of professional conduct appropriate to establish and maintain a high standard of integrity and dignity in the profession of public accountancy and to govern the administration and enforcement of the ... Act." § 1-112. See, also, Zwygart, supra.
A permit to engage in the practice of public accountancy is issued by the Board to persons who hold certificates issued by the Board and who have met experience requirements. § 1-136(1). Permits for certificate holders may be renewed biennially for certificate holders and registrants in good standing. § 1-136(2)(b).
A certificate holder or registrant who has not lost his or her right to issuance or renewal of a permit and "who is not actively engaged in the practice of public accountancy in this state may file a written application with the board to be classified as inactive." § 1-136(4). The person is then carried on an "inactive roll" and may be issued a current permit upon application and payment of the current permit fee. Id.
The "`[p]ractice of public accountancy'" is defined in 288 Neb. Admin. Code, ch. 3, § 001.17 (1995), as "the performance or offering to perform by a person holding himself out to the public as a permit holder ... of one or more kinds of services involving ... the preparation of tax returns or the furnishing of advice on tax matters." Whether active or inactive, a permitholder "shall be styled and known as a certified public accountant and may also use the abbreviation C.P.A." § 1-122. However, the Board's rules provide that when an inactive registrant uses "Certified Public Accountant" or "CPA" with his or her name, he or she shall also use "the disclaimer `Inactive Registrant' in parentheses immediately after the title or abbreviation." 288 Neb. Admin. Code, ch. 7, § 003.01 (2007). After notice and hearing, the Board may take disciplinary action against a permitholder for, among other reasons, violation of a rule of professional conduct adopted and promulgated by the Board under the authority granted by the Act. § 1-137(4). The types of disciplinary action available to the Board include reprimand, suspension, probation, placement of limits on a permit or certificate, revocation of a permit or certificate, and imposition of a civil penalty and costs. See § 1-148.

1. ADVERTISING CHARGE

(a) Subject Matter Jurisdiction
Walsh asserts that the Board did not have subject matter jurisdiction over him because the only service he provided to clients was the completion of tax returns. This assignment of error has no merit. As noted earlier, the Board is authorized to discipline the holders of certificates and permits who fail to comply with the technical or ethical standards of the public accountancy profession. Zwygart v. State, 273 Neb. 406, 730 N.W.2d 103 (2007). Walsh used the "CPA" designation in his advertising and, therefore, submitted himself to the jurisdiction of the Board.
The definition of the "`[p]ractice of public accountancy'" in the Board's rules includes the service of preparing tax returns, *107 288 Neb. Admin. Code, ch. 3, § 001.17. Thus, the Board has jurisdiction over those persons who hold themselves out as permitholders and who prepare tax returns. By advertising in the telephone directory as a CPA and tax preparer, Walsh held himself out as a CPA, and he was subject to the jurisdiction of the Board.

(b) Board's Rules
Walsh next claims that the Board's rules enlarge and modify the enabling statutes. As previously noted, the Board has the authority to adopt and promulgate rules and regulations of professional conduct and to govern the administration and enforcement of the Act. See Zwygart, supra. See, also, §§ 1-108 and 1-112. State law provides a procedure for the adoption of rules and regulations that are "designed to implement, interpret, or make specific the law enforced or administered" by an agency, Neb.Rev.Stat. § 84-901(2) (Reissue 2008).
An administrative body has no power or authority other than that specifically conferred by statute or by construction necessary to accomplish the plain purpose of the act. Brunk v. Nebraska State Racing Comm., 270 Neb. 186, 700 N.W.2d 594 (2005). We have often held, however, that an administrative agency may not employ its rulemaking power to modify, alter, or enlarge provisions of a statute which it is charged with administering. Id. In this case, the Board is charged by statute with "protecting] the welfare of the citizens of the state by assuring the competency of persons regulated" under the Act. See § 1-105.01. The Board has the authority to adopt rules that will "make specific" the laws which it is directed to enforce. See § 84-901(2). It has the authority to discipline certificate holders and permitholders who fail to comply with the technical or ethical standards of the public accountancy profession. Zwygart, supra. See, also, § 1-105.01.
The Board's rules provide: "Whenever using `Certified Public Accountant' or `CPA' with his or her name, an inactive registrant shall use the disclaimer `Inactive Registrant' in parentheses immediately after the title or abbreviation." 288 Neb. Admin. Code, ch. 7, § 003.01. The district court found that the Board's restrictions on the advertisement of inactive registrants and the requirement of the use of the disclaimer serve the fundamental purpose of the Act in ensuring that the public is able to distinguish among those who are permitted to practice public accountancy and those who are not. We agree.
The rules adopted by the Board do not enlarge or modify the Act. The Board is authorized to promulgate rules which allow it to meet the purpose of ensuring the competency of persons practicing public accountancy. There is no merit to Walsh's argument.

(c) Due Process
Walsh also argues that his due process rights were violated because the complaint charged that he had violated an advertising rule, but he was found to have violated the rule requiring a disclaimer.
The complaint charged that Walsh had violated 288 Neb. Admin. Code, ch. 3, § 001.09 (1995), which defines the phrase "`[h]olding out to the public as a permit holder'" as follows:
[A]ny representation that a person holds a permit to practice made in connection with an offer to perform or the performance of services to the public. Any such representation is presumed to invite the public to rely upon the professional *108 skills implied by the permit in connection with services offered to be performed. For purposes of this definition and these rules, a representation shall be deemed to include any oral or written communication conveying that a licensee holds a permit, including the use of titles or legends displayed in letterheads, business cards, office doors, advertisements, and listings.
Walsh argues that his due process rights were violated because he was actually found to have violated 288 Neb. Admin. Code, ch. 7, § 003.01, which provides: "Whenever using `Certified Public Accountant' or `CPA' with his or her name, an inactive registrant shall use the disclaimer `Inactive Registrant' in parentheses immediately after the title or abbreviation." He claims that he was never given notice of the disclaimer charge. We find no merit to this argument.
Walsh was on notice that the Board charged him with violating the rules against holding himself out to the public as a permitholder. Interwoven with this rule is the requirement that an inactive registrant include the disclaimer. Walsh had filed a brief on this issue 3 weeks before the hearing that addressed the use of the disclaimer. We conclude that Walsh had sufficient notice as to the rules he allegedly violated and that his due process rights were not infringed.

(d) First Amendment
Next, Walsh argues that the Board's charge that he violated the rule requiring a disclaimer violates the First Amendment right to free speech under Central Hudson Gas & Elec. v. Public Serv. Comm'n, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).
There is nothing in the record to indicate that this argument was presented to the district court for consideration. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. State ex rel. Stenberg v. Consumer's Choice Foods, 276 Neb. 481, 755 N.W.2d 583 (2008). The district court cannot commit error in resolving an issue never presented and submitted to it for disposition. Orchard Hill Neighborhood v. Orchard Hill Mercantile, 274 Neb. 154, 738 N.W.2d 820 (2007).

2. DISCREDITABLE ACT CHARGE

(a) Constitutionality
Walsh argues that the district court erred in failing to find that 288 Neb. Admin. Code, ch. 5, § 007.01, is unconstitutionally vague. Walsh offers no additional argument beyond merely stating that the "vagueness of the Catch-All Standard" of the Board's rules violates the state and federal Constitutions. See brief for appellant at 27. To be considered by this court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. Malchow v. Doyle, 275 Neb. 530, 748 N.W.2d 28 (2008). We need not consider this assigned error further.

(b) Nexus
Next, Walsh claims there was not a sufficient nexus, between the practice of public accountancy and Walsh's activity in lying to the insurance company, for the Board to discipline him.
The Board's rules provide that "[a] licensee shall not commit an act that reflects adversely on his fitness to engage in the practice of public accountancy." 288 Neb. Admin. Code, ch. 5, § 007.01. The record is clear that Walsh impersonated Teiper and lied to the insurance company. The Board is authorized to adopt rules and regulations "of professional conduct appropriate to establish and maintain a high *109 standard of integrity and dignity in the profession of public accountancy." § 1-112.
This court has stated that "like attorneys or medical professionals, [CPA's] must demonstrate a high degree of moral and ethical integrity." Troshynski v. Nebraska State Bd. of Pub. Accountancy, 270 Neb. 347, 353, 701 N.W.2d 379, 385 (2005). We have also stated:
"The field of public accounting is a specialized one and the legislature has seen fit to regulate it. A certificate as a[CPA] indicates to the public that the person holding such a certificate possesses the highest sort of qualifications and is one in whom may be placed the utmost trust and confidence...."
Zwygart v. State, 273 Neb. 406, 416, 730 N.W.2d 103, 112 (2007), quoting Smith v. State Board of Accountancy of Kentucky, 271 S.W.2d 875 (Ky.1954).
We then stated:
It is readily apparent that individuals rely upon honesty, integrity, sound professional judgment, and compliance with government regulations when they consult a CPA, even if the CPA may not be specifically acting as an accountant.... Accounting is a regulated profession, and its members are held to standards established by the Board.
Zwygart, 273 Neb. at 417, 730 N.W.2d at 112.
The district court found that a person could not knowingly impersonate another and make false statements without tainting the individual's reputation as a CPA and the reputation of the profession as a whole. We agree with the district court. Accountants are held to the standards established by the Board and must demonstrate moral and ethical integrity in the same manner as attorneys and medical professionals. Walsh's claim that there is no nexus between his actions and the practice of public accountancy lacks merit.

(c) Right to Confront Accuser
Finally, Walsh assigns as error the district court's failure to dismiss the discreditable act charge because the Board denied his "Seventh Amendment" right to confront his accuser. The right to confront one's accuser is guaranteed by the Sixth Amendment to the U.S. Constitution, which provides the right to confront witnesses "[i]n all criminal prosecutions." The proceeding against Walsh was purely civil in nature, and his constitutional rights are not at issue.

3. SUMMARY
Walsh failed to include a disclaimer stating that he was an inactive registrant in his advertising in the telephone directory, which failure violated the rules promulgated by the Board. He continued the violation even after he was directed by the Board to cease and desist. Walsh also impersonated his brother-in-law when he called an insurance company in order to obtain financial information. This action reflects adversely on the public accountancy profession, which demands a high level of honesty and integrity.
This case comes to us for review of a judgment rendered by a district court pursuant to the Administrative Procedure Act, and as such, the judgment may be reversed, vacated, or modified for errors appearing on the record. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. See Nothnagel v. Neth, 276 Neb. 95, 752 N.W.2d 149 (2008). We find no errors on the record reviewed by the district court. The court's decision affirming *110 the order of the Board conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

VI. CONCLUSION
The judgment of the district court is affirmed.
AFFIRMED.