GREGORY S. POOR, D.C., APPELLANT, V.
STATE OF NEBRASKA, APPELLEE.
663 N.W.2d 109

Filed June 20, 2003. No. S-02-472.

K.C. Engdahl, of Raynor, Rensch & Pfeiffer, for appellant.

Don Stenberg, Attorney General, and James D. Smith for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Gregory S. Poor, D.C., appeals from an order of the district court for Lancaster County which affirmed the revocation of his license to practice chiropractic medicine by the Nebraska Department of Health and Human Services Regulation and Licensure. We affirm.

## BACKGROUND

Poor received his chiropractic training between January 1992 and May 1995, and has been a licensed chiropractor in the State of Nebraska since July 1995. In an eight-count federal indictment filed in Omaha, Nebraska, in May 1998, Poor was charged with conspiracy to distribute gamma hydroxybutyrate (GHB), introducing GHB into interstate commerce with the intent to defraud and mislead, and witness tampering. Poor entered a plea agreement on March 10, 2000, in which he agreed to plead guilty to one count of conspiracy to manufacture and distribute a misbranded substance, GHB, in violation of 18 U.S.C. § 371 (2000). The plea agreement further provided:

> Although not entering a plea of guilty to Counts II through VII of the Indictment, GREGORY POOR admits the conduct set forth in those Counts and further agrees and stipulates that Counts II through VII inclusive will be considered as relevant conduct when computing the appropriate sentencing guidelines range as though pleas of guilty had been entered.

Counts II, III, and IV alleged that Poor introduced misbranded drugs into interstate commerce on July 17 and October 26 and 28, 1995. Counts V, VI, and VII alleged that Poor introduced adulterated drugs into interstate commerce on the same three occasions.

In exchange for Poor's admission of the underlying conduct, the United States agreed to dismiss counts II through VII as well as count VIII, which alleged witness tampering. Poor entered a guilty plea to count I and on May 31, 2000, was sentenced to 4 months' imprisonment, 3 years' supervised release, and a $2,000 fine. He was ordered to surrender for service of his sentence before 2 p.m. on June 30, 2000.

On June 9, 2000, after his conviction and sentencing but before he surrendered for service of his sentence, Poor was

arrested in Overland Park, Kansas, for driving under the influence. On January 26, 2001, following his release from prison, Poor was convicted of this charge.

In this disciplinary proceeding, the State alleged four "Causes of Action." The first cause of action alleged that on or about May 29, 1999, Poor illegally possessed cocaine, and that such possession constituted a violation of Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 1998), of the Uniform Controlled Substances Act, and was a ground for discipline under Neb. Rev. Stat. § 71-147(17) (Cum. Supp. 1998). The second cause of action listed examples of Poor's conduct which the State alleged "separately and cumulatively, constitute grossly immoral or dishonorable conduct evidencing unfitness," thus constituting grounds for discipline pursuant to § 71-147(2) (Reissue 1996). Specifically, the State accused Poor of the following acts:

> a. Lying to a Department investigator during the course of an official investigation on September 9, 1999;

> b. Conspiring to manufacture and distribute a misbranded substance in violation of Federal law, as alleged in the May 1998 Federal indictment;

> c. Tampering with a witness to hinder a pending federal investigation of the Defendant in violation of federal law as alleged in the May 1998 Federal indictment;

> d. Introducing misbranded drugs into interstate commerce as alleged in the May 1998 Federal indictment; and,

> e. Failure to warn his companions regarding the dangers of ingesting GHB either in isolation, or in combination with alcohol.

In the third and fourth causes of action, the State alleged that Poor's felony conviction and his misdemeanor driving under the influence conviction are both rationally connected to Poor's fitness or capacity to practice chiropractic medicine and thus constitute grounds for discipline under § 71-147(4).

An administrative hearing was conducted by a hearing officer on June 20, July 16, and August 27, 2001. Poor testified that he used GHB from 1992 until 1995. Poor denied experiencing adverse physical effects from GHB use, but admitted that he was hospitalized and subsequently released without treatment following GHB use in 1994. Despite the admissions in his plea

agreement, Poor denied that he engaged in any of the underlying conduct charged in counts II through VII of the indictment. Poor testified that he signed the plea agreement on the advice of counsel and denied that he had ever transported GHB across state lines.

Jeffrey Noble, a deputy sheriff for Pottawattamie County, Iowa, testified regarding the allegation that Poor had knowingly possessed cocaine. Noble testified that he encountered Poor on or about May 30, 1999, while Noble was working as a private security officer at an Omaha bar. Noble observed Poor drop a small bag containing a white substance as he was extracting some cash from his pocket. Poor tried to cover the bag with his foot. Suspecting that the bag contained cocaine, Noble asked Poor if it was his, and Poor did not respond. Noble placed handcuffs on Poor and enlisted the aid of another officer outside the bar. During a custodial search, Noble found a second bag containing a white substance in Poor's pocket. Subsequent testing confirmed that the white substance in both bags was cocaine. Poor was arrested and charged with possession of cocaine, but the charges were subsequently dismissed for reasons which are not apparent from the record.

Kevin Davis, D.C., a licensed chiropractor who served on the state Board of Chiropractic from 1995 through 2000, testified as an expert. Based on his training and experience, Davis testified that Poor's felony conviction violated the "basic premise" of chiropractic medicine, which is "a form of drugless, nonsurgical treatment of the human body." Davis also stated that Poor's distribution of GHB showed poor professional judgment and constituted unsound ethical practice that would not fit within the guidelines of the American Chiropractic Association's ethical code. Davis stated that Poor's lack of sound judgment reflects on his honesty, which is the foundation of treating any health care problem.

Also testifying for the State was Gregory Nieto, a special agent with the Food and Drug Administration's office of criminal investigation in Lenexa, Kansas. In 1995, Nieto became involved in an investigation concerning a death suspected to have been caused by GHB use. Nieto's investigation eventually led to Poor's indictment in May 1998, although no evidence ever

connected Poor to the death. In March 2000, following his plea of guilty, Poor spoke with Nieto and verified that he had transported GHB to Council Bluffs, Iowa, in a gallon jug on October 28, 1995. On cross-examination, Nieto testified that GHB was not illegal as a controlled substance in 1995 and that people generally were not being prosecuted for possession of GHB at that time. However, Nieto testified that in 1995, the Food and Drug Administration was prosecuting persons involved in the manufacturing and distribution of GHB because of known overdose situations around the country.

Rodger Green, an investigator with the Nebraska Department of Health and Human Services Regulation and Licensure's division of investigations, was the final witness to testify on behalf of the State. Green was assigned to investigate Poor on May 26, 1998. Green interviewed Poor twice regarding this case, once on June 23, 1998, and once on September 9, 1999. On June 23, 1998, Green and Poor discussed GHB. Poor identified nausea and vomiting as the only side effects of GHB use and denied that he ever sold the substance. On September 9, 1999, following interviews with other parties, Green conducted a followup interview with Poor for purposes of clarifying certain points. In this interview, Poor again denied ever giving or selling GHB to anyone and also denied ever having possessed cocaine. Poor did admit that he had been hospitalized in connection with GHB use and agreed to give Green a release of information. Following the conclusion of the State's case, seven affidavits from Poor's patients were offered and received into evidence in his behalf and the proceedings were concluded.

As a consequence of the hearings, the chief medical officer of the Nebraska Department of Health and Human Services Regulation and Licensure entered an order on November 13, 2001, revoking Poor's license to practice as a chiropractor in the State of Nebraska effective 30 days from the date of the entry of the order. Generally, the chief medical officer found that the felony conviction and the underlying facts of the conviction constituted grossly immoral or dishonorable conduct evidencing unfitness to practice one's profession and that such conduct was rationally connected to Poor's fitness or capacity to practice his profession pursuant to § 71-147(2) and (4). The chief medical

officer dismissed the first and fourth causes of action, finding that the allegations of illegal possession of cocaine were not proved by clear and convincing evidence and that Poor's driving under the influence conviction was not clearly and convincingly rationally connected to Poor's fitness or capacity to practice his profession.

Poor filed a petition for review in Lancaster County District Court on December 7, 2001, and proceedings, in which arguments were made by counsel but no witnesses were called, were held on March 20, 2002. Contrary to Poor's previous testimony, Poor's attorney conceded that "[Poor] did the things that were alleged in terms of transportation of the [GHB]." Poor's attorney argued that Poor had made a mistake of youth; that no one really understood the potential risks of using GHB in 1995; and that suspension, not revocation, would be an appropriate sanction.

On April 3, 2002, the district court affirmed the chief medical officer's order revoking Poor's license. The court found, however, that the chief medical officer's conclusion that Poor had tampered with a witness was clearly erroneous because the charge had been dismissed, Poor never admitted the charge, and no evidence in the record supported such a finding. In affirming the chief medical officer's decision, the district court stated:

> This court concurs with the conclusion of the Chief Medical Officer that the facts underlying the federal felony conviction constitute grossly immoral or dishonorable conduct evidencing his unfitness to practice his profession as a chiropractor. The court further finds by clear and convincing evidence that Poor knowingly possessed cocaine on May 30, 1999 and that this constitutes grossly immoral or dishonorable conduct evidencing unfitness to practice his profession. Although not sufficient standing alone to constitute grossly immoral or dishonorable conduct, the June 9, 2000, driving while intoxicated offense, having occurred when it did, is relevant in determining the appropriate sanction. The federal felony conviction, and the acts included therein, and the possession of cocaine, are rationally connected to Poor's fitness or capacity to practice his profession.

Poor filed this appeal pursuant to Neb. Rev. Stat. § 84-918 (Reissue 1999) on April 29.

## ASSIGNMENTS OF ERROR

Poor assigns, restated and consolidated, that the district court erred (1) in concluding that he engaged in grossly immoral or dishonorable conduct evidencing unfitness to practice his profession, (2) in concluding that his criminal convictions were rationally connected to his fitness and capacity to practice his profession, (3) in relying upon his possession of cocaine as a ground for discipline, and (4) in determining license revocation to be the appropriate sanction.

## STANDARD OF REVIEW

In an appeal under the Administrative Procedure Act, an appellate court will not substitute its factual findings for those of the district court where competent evidence supports the district court's findings. *Forgét v. State*, 265 Neb. 488, 658 N.W.2d 271 (2003); *Kosmicki v. State*, 264 Neb. 887, 652 N.W.2d 883 (2002).

A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Forgét v. State, supra; Hass v. Neth*, 265 Neb. 321, 657 N.W.2d 11 (2003); *American Legion v. Nebraska Liquor Control Comm.*, 265 Neb. 112, 655 N.W.2d 38 (2003).

When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Forgét v. State, supra; Hass v. Neth, supra; American Legion v. Nebraska Liquor Control Comm., supra.*

To the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Forgét v. State, supra; American Legion v. Nebraska Liquor Control Comm., supra.*

## ANALYSIS

Nebraska law provides at § 71-147, in relevant part, that a license to practice a health care profession may be revoked when the licensee is guilty of any of the following acts or offenses:

(2) Grossly immoral or dishonorable conduct evidencing unfitness or lack of proficiency sufficient to meet the standards required for practice of the profession in this state;

. . . .

(4) Conviction of a misdemeanor or felony under state law, federal law, or the law of another jurisdiction and which, if committed within this state, would have constituted a misdemeanor or felony under state law and which has a rational connection with the applicant's, licensee's, certificate holder's, or registrant's fitness or capacity to practice the profession[.]

See, also, 172 Neb. Admin. Code, ch. 29, § 009.03(2) and (4) (2001).

The allegations made in disciplinary proceedings against a licensed health care professional must be proved by clear and convincing evidence. *Davis v. Wright*, 243 Neb. 931, 503 N.W.2d 814 (1993). The district court found, inter alia, that the following facts were proved by clear and convincing evidence: (1) Poor engaged in a conspiracy to manufacture and distribute a misbranded substance in violation of 18 U.S.C. § 371; (2) Poor introduced into interstate commerce misbranded and adulterated drugs with the intent to defraud and mislead in violation of 21 U.S.C. §§ 331(a) and 333(a)(2) (1994); (3) Poor was arrested in Overland Park, Kansas, on June 9, 2000, for driving under the influence and was convicted of that offense on January 26, 2001; and (4) Poor did knowingly possess cocaine on May 30, 1999. In this appeal, Poor concedes that these factual determinations "find evidentiary support in the record" and "are understood as beyond dispute." Brief for appellant at 19.

Poor disputes the district court's conclusion that these facts amount to "grossly immoral or dishonorable conduct evidencing his unfitness" under § 71-147(2) and that Poor's felony conviction and its underlying conduct were "rationally connected" with Poor's fitness or capacity to practice chiropractic medicine under § 71-147(4). Poor argues that the State was required not only to present clear and convincing evidence that the factual allegations were true, but, in addition, to prove by clear and convincing evidence that any proven facts constitute grounds for revocation of his license.

■ Contrary to Poor's contention, the question of whether his undisputed conduct falls within the statutorily defined grounds for discipline is not an issue of fact, but, rather, an issue of law. To the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Forgét v. State*, 265 Neb. 488, 658 N.W.2d 271 (2003); *American Legion v. Nebraska Liquor Control Comm.*, 265 Neb. 112, 655 N.W.2d 38 (2003).

### Grossly Immoral or Dishonorable Conduct Evidencing Unfitness

In determining whether Poor's conduct warranted the discipline imposed, we must first determine the meaning and scope of the phrase "[g]rossly immoral or dishonorable conduct evidencing unfitness" under § 71-147(2). This phrase is not defined by the statutes governing revocation of professional licenses and certificates. See § 71-147 and Neb. Rev. Stat. §§ 71-147.01 through 71-161.20 (Reissue 1996 & Cum. Supp. 2002). We considered similar language in *Clarke v. Board of Education*, 215 Neb. 250, 338 N.W.2d 272 (1983), which presented the question of whether a teacher's use of racial slurs directed against his students constituted "immorality" within the meaning of a statute relating to teacher discipline. Acknowledging the inherent difficulty in judicial determination of "the limits of a term such as 'immoral,' " *id.* at 254, 338 N.W.2d at 274, we stated:

> There is no question that the task presented to us would be made much easier if the Legislature had defined "immorality" as it did "insubordination," when it adopted § 79-1260. Undoubtedly, it did not define the term because, as we have difficulty, so too did it have difficulty in prescribing a limited definition. It is for that reason that we wish to make it clear that our decision here today is not intended to provide an all-inclusive, broad, and general definition of the term "immorality," either generally or within the meaning of § 79-1260, but, rather, only to determine whether, under the facts in this case, Clarke's action was in fact immoral within the meaning of § 79-1260. In

attempting to arrive at that answer we must take into account the specific facts presented to us in this case.

215 Neb. at 255, 338 N.W.2d at 274-75. Likewise, in this case, our objective is to determine whether the undisputed facts fall within the statutory grounds for discipline.

 Absent anything to the contrary, statutory language is to be given its plain and ordinary meaning. *Henderson v. Henderson*, 264 Neb. 916, 653 N.W.2d 226 (2002). Many jurisdictions have been confronted with the need to define terms such as "grossly immoral" and "dishonorable" within the context of statutes authorizing discipline of health care professionals. See, *Heinmiller v. Dep't of Health*, 127 Wash. 2d 595, 903 P.2d 433 (1995); *Betts v. Dept. of Registration & Educ.*, 103 Ill. App. 3d 654, 431 N.E.2d 1112 (1981); *Buhr v. Bd. of Chiropractic Examiners*, 261 Ark. 319, 547 S.W.2d 762 (1977); *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 436 P.2d 828 (1968); *State ex rel. Lentine v. State Board of Health*, 334 Mo. 220, 65 S.W.2d 943 (1933); 61 Am. Jur. 2d *Physicians, Surgeons, and Other Healers* § 77 (2002). An overview of these and other cases led to the following synopsis:

> "Unprofessional," "dishonorable," or "immoral" conduct in connection with the practice of medicine or the particular branch or system of medicine in which the licensee in question is engaged is specified as grounds for revocation in many of the statutes, and the validity of such statutes has been sustained by the courts in almost every instance. These quoted words, and other similar ones that are sometimes used in the statutes, are general, but are construed to mean that which, by common understanding and general opinion, is considered to be grossly immoral, dishonorable, or disreputable in connection with the practice of medicine. It has been held that a statute authorizing revocation for "immoral," "dishonorable," or "unprofessional" acts or conduct contemplates conduct that shows that the person guilty of it either is intellectually or morally incompetent to practice the profession or has committed an act or acts of a nature likely to jeopardize the interest of the public; it does not authorize revocation

for trivial reasons or for a mere breach of the generally accepted ethics of the profession.

61 Am. Jur. 2d, *supra* at 200-01.

In this case, it is undisputed that Poor conspired to manufacture and distribute GHB and introduced misbranded and adulterated drugs into interstate commerce. Clearly, the district court's determination that Poor had engaged in "grossly immoral or dishonorable conduct" was not based on "trivial reasons." We find that Poor's conduct clearly falls within the plain and ordinary meaning of "[g]rossly immoral or dishonorable conduct" for the purposes of § 71-147(2).

In order to be in violation of § 71-147(2), however, Poor's conduct must also evidence his unfitness to practice chiropractic medicine in Nebraska. In its order finding Poor to be unfit, the district court relied in part on Poor's denial of the conduct underlying his felony conviction. The court stated: "Poor's denial now, after taking advantage of the plea bargain, that he committed any of the acts he admitted to in the United State[s] District Court is disturbing and is not consistent with the integrity and acceptance of responsibility expected by persons engaged in a professional occupation."

Davis, a chiropractor and former member of the state Board of Chiropractic, testified that Poor's felony conviction violated the "basic premise" of chiropractic medicine, which he identified as "a form of drugless, nonsurgical treatment of the human body." See, also, Neb. Rev. Stat. § 71-177 (Reissue 1996) (defining chiropractic medicine as practice "without the use of drugs"). The record also includes a "Statement of Reasons for Sentence" in Poor's federal criminal proceeding, wherein the sentencing judge found that Poor had obtained large quantities of GHB for distribution over a substantial period of time, that Poor "was aware of the risk associated with ingestion of GHB[,] and that his conduct in distributing GHB constituted a reckless risk of serious bodily injury."

We have no difficulty in concluding from this record that Poor's possession, use, and unlawful distribution of potentially dangerous drugs, as well as his lack of candor, are competent evidence of his unfitness to practice a health care profession which

holds as a "basic premise" the "drugless, nonsurgical treatment of the human body." There is no merit to Poor's contention that the district court erred in concluding that he committed "[g]rossly immoral or dishonorable conduct evidencing unfitness" within the meaning of § 71-147(2).

We note Poor's argument that the district court erred in considering his cocaine possession as a part of such conduct was not alleged as such in the operative petition for disciplinary action. We need not address this issue because other evidence, specifically Poor's involvement in the unlawful interstate distribution of GHB coupled with his lack of candor, is more than sufficient to establish this statutory ground for discipline.

### RATIONAL CONNECTION

Under § 71-147(4), a license may be revoked if a licensee has been convicted of a misdemeanor or felony which has a "rational connection" with the licensee's "fitness or capacity to practice the profession." It is undisputed that, pursuant to § 71-161.01, Poor's felony conviction is a conviction within the meaning of § 71-147(4). Therefore, we need only determine whether the district court erred in finding a "rational connection" between Poor's conviction and his fitness or capacity to practice chiropractic medicine.

Chiropractic medicine is a regulated health care profession. Patients necessarily rely upon the chiropractor's honesty, integrity, sound professional judgment, and compliance with applicable governmental regulations. The record shows that Poor introduced misbranded and adulterated drugs into interstate commerce *"with the intent to defraud and mislead."* In addition, subsequent to his admission of the underlying conduct in counts II through VII of the federal indictment, Poor denied the same conduct at the hearing held before the chief medical officer. Poor argues that "[t]here is absolutely no testimony or evidence to the effect that anything which . . . Poor did constituted a threat of harm to his patients." Brief for appellant at 35. However, as noted above, his criminal conduct was determined by the sentencing judge to evidence a "reckless risk of serious bodily injury." We find that the record contains sufficient competent evidence to support the determination of the district court

that Poor's federal felony conviction and conduct upon which it was based are rationally connected to Poor's fitness or capacity to practice his profession.

### APPROPRIATE SANCTION

Poor contends that the district court erred in determining that license revocation was an appropriate sanction. He argues that "[a] suspension, short of revocation, would be sufficient for purposes of punishing [Poor] and deterring others from engaging in similar activity." Brief for appellant at 35.

The criteria to be considered in determining an appropriate professional disciplinary sanction were outlined by this court in *State ex rel. NSBA v. Brown*, 251 Neb. 815, 821, 560 N.W.2d 123, 129 (1997), and include:

> (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the [profession] as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of [the profession].

Although *Brown* involved a disciplinary action against an attorney who was convicted of a drug offense, we see no reason not to apply this same test in assessing the severity of a disciplinary sanction imposed upon a health care professional. See *Davis v. Wright*, 243 Neb. 931, 503 N.W.2d 814 (1993) (finding no basis for differentiating between disciplinary proceedings against attorneys and physicians with respect to burden of proving allegations by clear and convincing evidence). Based on the seriousness of Poor's felony conviction and its underlying conduct, Poor's subsequent lack of candor with respect to that conduct, and Poor's lack of sound judgment demonstrated by the driving under the influence conviction, we conclude that revocation of Poor's license was an appropriate sanction.

### CONCLUSION

Based upon the facts which were established by clear and convincing evidence, and for the reasons stated above, we conclude that the district court did not err in affirming the revocation of Poor's license to practice chiropractic medicine in Nebraska. Finding no error on the record, we affirm.

AFFIRMED.