HAZEL I. WILSON, APPELLANT, V. NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES AND RON ROSS, DIRECTOR OF THE NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES, APPELLEES.

718 N.W.2d 544

Filed August 4, 2006. No. S-04-1085.

Kimberli D. Dawson and Bruce L. Hart, of Hart, Dawson & Sudbeck, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, Michael J. Rumbaugh, Royce N. Harper, and Patricia R. Wenzl, Special Assistant Attorney General, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

An applicant for Medicaid was found ineligible for benefits because she transferred resources to her sons for less than fair market value within 60 months preceding her application for benefits. On appeal to the district court, the order was affirmed. The applicant appeals the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

The appellant, Hazel I. Wilson, and her husband, Ray C. Wilson, executed a revocable trust agreement in April 1991 to establish the Ray and Hazel Wilson Trust (the Trust). The Trust agreement was later amended in February 1994. The Trust agreement provided, in part:

> At any time or times prior to the death of a GRANTOR by a duly executed and acknowledged written instrument substantially in the form set forth at Appendix "B" attached hereto, GRANTORS may, either jointly or individually, amend or alter this Trust Agreement in any manner, in whole or in part; and may revoke this Trust Agreement in whole or in part.

The Trust agreement provided that upon the death of either Ray or Hazel, the Trust estate would be divided into two new trusts, "Trust A" and "Trust B." The Trust agreement specified the assets to be placed in each of the trusts. Ray died on July 23, 1998, and pursuant to the Trust agreement, the Trust estate was divided into Trusts A and B.

The Trust agreement instructed the trustee to distribute from the net income of Trust A, and to the extent that the income is insufficient, from the principal of Trust A, all amounts required for the medical care, education, support, and maintenance of Hazel. Further, Hazel was given the power to withdraw all or any part of the principal of Trust A by delivering a signed document describing such property to the trustee. Upon receipt of the document, the trustee would distribute the property to Hazel. The Trust agreement similarly instructed the trustee to distribute from the net income of Trust B all amounts required for the health, education, support, and maintenance of Hazel. While the income generated by Trust B was available to Hazel, she was not entitled to invade the principal of Trust B.

In 1999, Hazel transferred property totaling $636,638.07 to her sons, Douglas L. Wilson and Randy R. Wilson. The property included real estate that had been held in the Trust. The property was deeded from the Trust to Hazel by trustee's deed and then deeded by Hazel to Douglas and Randy. Hazel also directed the trustee to distribute various stock and bond accounts, cash, and other personal property to Douglas and Randy.

On January 28, 2003, while residing in a nursing home, Hazel applied for Medicaid benefits with a local office of the Nebraska Department of Health and Human Services (DHHS) in Kearney, Nebraska. The application was revised in part on February 21. Hazel was found ineligible for benefits as a result of her gifting resources for less than fair market value within the 60 months preceding her application. Further, Hazel was instructed that she would remain ineligible until approximately August 2014.

Hazel filed a request for hearing with DHHS. After an administrative hearing, the director of DHHS affirmed the decision finding Hazel to be ineligible for Medicaid benefits. Hazel filed a petition for review in the district court; a hearing was held, and

the court affirmed the judgment of the director. Hazel filed this timely appeal.

## ASSIGNMENTS OF ERROR

Hazel assigns, restated, that the district court erred in affirming the decision of DHHS (1) finding Hazel to be ineligible for Medicaid assistance because she transferred resources for less than fair market value within the 60 months preceding the date of her application and (2) determining that Hazel may not reapply for Medicaid benefits until approximately August 2014.

## STANDARD OF REVIEW

■ A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Mortgage Elec. Reg. Sys. v. Nebraska Dept. of Banking*, 270 Neb. 529, 704 N.W.2d 784 (2005).

## ANALYSIS

Hazel assigns that the district court erred in affirming the decision of DHHS finding Hazel to be ineligible for Medicaid benefits as a result of her gifting of resources for less than fair market value within the 60 months preceding her application for assistance. Specifically, Hazel asserts that DHHS incorrectly applied a 60-month look-back period in determining Hazel's eligibility for benefits.

*Medicaid Background.*

■ The Medicaid program, 42 U.S.C. § 1396 et seq. (2000 & Supp. II 2002), was established by Congress in 1965 as a cooperative federal-state program in which the federal government reimburses states for a portion of the costs of medical care for persons in need. See *Boruch v. Nebraska Dept. of Health & Human Servs.*, 11 Neb. App. 713, 659 N.W.2d 848 (2003). The purpose of the program is to provide medical assistance to those whose resources are insufficient to meet the costs of necessary

medical care. *Pohlmann v. Nebraska Dept. of Health & Human Servs.*, 271 Neb. 272, 710 N.W.2d 639 (2006). A state is not obligated to participate in the Medicaid program; however, once it has voluntarily elected to participate, it must comply with standards and requirements imposed by federal statutes and regulations. *Id.* Nebraska has elected to participate in the Medicaid program by its enactment of Neb. Rev. Stat. § 68-1018 et seq. (Reissue 2003, Cum. Supp. 2004 & Supp. 2005), and DHHS is responsible for the administration of the Medicaid program in this state. *Pohlmann, supra.* Under federal law, a state participating in the Medicaid program must establish resource standards for the determination of eligibility. These standards must take into account only such income and resources as are available to the applicant or recipient, as determined in accordance with standards prescribed by the Secretary of the U.S. Department of Health and Human Services. *Id.*

Prior to 1986, irrevocable trusts were not considered assets in determining eligibility for Medicaid benefits. As a result, many people were receiving benefits when they had irrevocable trusts containing assets that would otherwise have made them ineligible for public assistance. Many people began to take advantage of the "trust gap" in Medicaid, establishing trust funds to shield their assets. In 1986, Congress passed an amendment attempting to close the gap so that assets in certain trusts would be counted in determining whether a Medicaid applicant satisfied the maximum assets requirement. *Boruch, supra.* See § 1396a(k) (Supp. IV 1986). Congress repealed § 1396a(k) in 1993 and passed § 1396p(d), expanding the types of trusts that could be considered to preclude applicants from Medicaid eligibility. See, § 1396p (Supp. V 1993); *Pohlmann, supra.*

Section 1396p(d)(3)(B) states, in relevant part:

In the case of an irrevocable trust—

(i) if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual, the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual, and payments from that portion of the corpus or income—

(I) to or for the benefit of the individual, shall be considered income of the individual, and

(II) for any other purpose, shall be considered a transfer of assets by the individual subject to subsection (c) of this section; and

(ii) any portion of the trust from which, or any income on the corpus from which, no payment could under any circumstances be made to the individual shall be considered, as of the date of establishment of the trust (or, if later, the date on which payment to the individual was foreclosed) to be assets disposed by the individual for purposes of subsection (c) of this section, and the value of the trust shall be determined for purposes of such subsection by including the amount of any payments made from such portion of the trust after such date.

If an institutionalized individual disposes of assets for less than fair market value on or after the look-back date specified by federal law, the individual is ineligible for medical assistance for a period of time. See § 1396p(c)(1)(A). Section 1396p(c)(1)(B) states:

(i) The look-back date specified in this subparagraph is a date that is 36 months (or, in the case of payments from a trust or portions of a trust that are treated as assets disposed of by the individual pursuant to paragraph (3)(A)(iii) or (3)(B)(ii) of subsection (d) of this section, 60 months) before the date specified in clause (ii).

(ii) The date specified in this clause, with respect to—

(I) an institutionalized individual is the first date as of which the individual both is an institutionalized individual and has applied for medical assistance under the State plan[.]

In other words, the look-back period is calculated from the date that an institutionalized individual applies for Medicaid assistance. The look-back period is generally 36 months, except for a 60-month look-back period for payment from a revocable trust, see § 1396p(d)(3)(A)(iii), or portions of an irrevocable trust not payable to the individual, see § 1396p(d)(3)(B)(ii).

 Congress specified that the 1993 amendment to the Medicaid act applies only to trusts established after August 10,

1993, the effective date of the enactment. *Boruch v. Nebraska Dept. of Health & Human Servs.*, 11 Neb. App. 713, 659 N.W.2d 848 (2003). The Nebraska regulation implementing the extended look-back periods is located at 469 Neb. Admin. Code, ch. 4 § 005.03A (2001), which states, "[t]o determine if a client or his/her spouse deprived himself/herself of a resource to qualify for medical assistance, the worker shall look back 36 months. The worker shall look back 60 months in cases of a trust or annuity." To the extent that state regulations conflict with the federal statutes, the federal provisions prevail. See, *Reames v. Oklahoma ex rel. OK Health Care*, 411 F.3d 1164 (10th Cir. 2005); *Ramey v. Reinertson*, 268 F.3d 955 (10th Cir. 2001); *Pohlmann v. Nebraska Dept. of Health & Human Servs.*, 271 Neb. 272, 710 N.W.2d 639 (2006). Although § 005.03(A) purports to apply a 60-month look-back period to all trust assets, federal law requires us to consider whether a 36- or 60-month look-back applies to the trust assets at issue in this case.

*Application of Medicaid Provisions to Present Case.*

DHHS, and the district court, determined that the transfers at issue here fell within the 60-month look-back period. Hazel argues that the 60-month look-back period in § 1396p(c)(1)(B)(i) does not apply to the transfers at issue because the Trust from which the transfers were made was established on April 13, 1991, before the effective date of the amendment creating the trust-specific, 60-month look-back period. Thus, Hazel argues that transfers from the Trust are subject to review under the look-back provision as it existed prior to the amendment; specifically, § 1396p(c)(1) (Supp. IV 1992), which specified a 30-month look-back period for examining the disposal of resources for less than fair market value. Hazel argues that application of the 30-month look-back period would require DHHS to examine transfers that occurred only as far back as July 28, 2000 (30 months preceding Hazel's Medicaid application), that Hazel's transfers to her sons occurred over 7 months prior to that date, and that thus, DHHS erred in finding Hazel to be ineligible for Medicaid benefits based on such transfers.

In contrast, DHHS asserts that the transfers at issue in this case were made from Trusts A and B, which were established

upon Ray's death in 1998. Accordingly, DHHS argues that the trusts at issue were established after the effective date of the 1993 amendment and are, therefore, subject to review under the more inclusive trust provisions added in 1993.

However, we need not determine whether the transfers are subject to the 30-month look-back period in place prior to the 1993 amendment, or the look-back period as it exists now, because the transfers at issue do not render Hazel ineligible for benefits under the application of either version of the statutes. DHHS incorrectly applied a 60-month look-back period when the look-back period specified by federal law was no longer than 36 months.

Assuming, for the sake of argument, that DHHS is correct in arguing that Trusts A and B were created upon Ray's death in 1998 by operation of the original Trust agreement, then the asset transfers at issue are subject to the 1993 Medicaid amendments. Those amendments impose a 36-month or 60-month look-back period for reviewing asset transfers for Medicaid eligibility. Under § 1396p(c)(1)(B)(i), the 60-month look-back period applies only to "payments from a trust or portions of a trust that are treated as assets disposed of by the individual pursuant to paragraph (3)(A)(iii) or (3)(B)(ii) of subsection (d)." The Trust at issue in this case became irrevocable upon Ray's death and therefore falls under § 1396p(d)(3)(B)(i) or (ii), of which only the latter is subject to a 60-month look-back period.

The Trust agreement provides that Hazel shall receive distributions from the income of Trusts A and B and the principal of Trust A. Therefore, such sums are considered resources available to the individual, and any transfer of such sums is considered a transfer of assets under § 1396p(d)(3)(B)(i), subject to the 36-month look-back period in § 1396p(c)(1)(B). The principal of Trust B, to which Hazel was not entitled under the Trust agreement, is considered to be disposed of or transferred by Hazel on the date upon which Hazel was no longer entitled to payment from such amount; such disposal is subject to the 60-month look-back period of § 1396p(c)(1)(B).

The property transferred by Hazel to her sons in this case was necessarily from the income and principal of Trust A or the income of Trust B. Hazel was not entitled to any distribution or

use of the corpus of Trust B and, therefore, could not have legally initiated transfers of property from the principal of Trust B to her sons. None of the parties to this case have offered argument or evidence suggesting that any of the Trusts at issue were not created, funded, or managed according to their terms. Therefore, the transfers in this case could have been made only from the income and principal of Trust A or the income of Trust B. The 60-month look-back period does not apply to either source of property. Consequently, even assuming that the 1993 amendments to the Medicaid act are applicable to Trusts A and B, DHHS may only look as far back as January 2000 for transfers affecting Hazel's eligibility for benefits, 36 months prior to Hazel's January 28, 2003, application. The transfers took place in 1999 and, therefore, are not considered for purposes of determining Hazel's eligibility for benefits.

The 1999 transfers made by Hazel to her sons were outside the look-back period for Medicaid eligibility when considered under either the pre-1993 Medicaid statutes or the statutes as amended in 1993. The transfers do not render Hazel ineligible for benefits. Thus, the district court erred in affirming the findings and order of DHHS.

## CONCLUSION

Based on the foregoing, we reverse the judgment of the district court with directions to reverse the order of DHHS and remand the cause for reinstatement of Hazel's Medicaid benefits.

REVERSED AND REMANDED WITH DIRECTIONS.