RODNEY G. ZWYGART, APPELLANT, v. STATE BOARD OF PUBLIC ACCOUNTANCY OF THE STATE OF NEBRASKA, APPELLEE.

730 N.W.2d 103

Filed April 20, 2007. No. S-05-1457.

Robert F. Bartle, of Bartle & Geier Law Firm, for appellant.

Robert T. Grimit, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

The Nebraska State Board of Public Accountancy (Board) found that Rodney G. Zwygart had violated Neb. Rev. Stat. § 1-137 (Reissue 1997) and rules and regulations promulgated by the Board. The Board revoked Zwygart's license to practice as a certified public accountant (CPA). The Board's decision was affirmed by the Lancaster County District Court, and Zwygart appeals.

## SCOPE OF REVIEW

 A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Wilson v. Nebraska Dept. of Health & Human Servs.*, 272 Neb. 131, 718 N.W.2d 544 (2006). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Wilson, supra.*

## BACKGROUND

Zwygart was licensed to practice as a CPA in 1976. In 1997, two lawsuits were filed against Zwygart in the Madison County District Court (trial court) alleging fraudulent acts related to a closely held corporation. The trial court found that Zwygart had made misrepresentations and violated his fiduciary duty as a corporate officer. The trial court concluded that Zwygart had perpetrated fraud on William Anderson and, as a result of fraudulent acts, had violated his fiduciary duty to David Fauss. A judgment of $93,501.54 was entered against Zwygart. Via a memorandum opinion, this court affirmed the trial court's ruling. See *Fauss v. Norfolk Avenue Liquor Mart*, 264 Neb. xxi (Nos. S-01-696, S-01-697, Sept. 18, 2002) (*Fauss* cases).

On May 16, 2003, an amended complaint was filed before the Board alleging that Zwygart had violated the Public Accountancy Act and the Board's rules and regulations. The complaint was based in part on the actions of Zwygart that were detailed in the *Fauss* cases.

The Board alleged that in the underlying *Fauss* cases, Zwygart had, in his capacity as a CPA, performed professional services for Fauss, Anderson, and various business entities. The services included using his accounting or auditing skills in the preparation of financial statements and tax returns, providing advisory or consulting services, and furnishing advice on tax matters. The Board also alleged that Zwygart kept the corporate records for the business entities and prepared necessary documents for filing with regulatory authorities, including Nebraska's Secretary of

State and the Nebraska Liquor Control Commission. The Board asserted that Zwygart's conduct was not limited to his activities as a shareholder in the business entities, that Zwygart used the knowledge he gained in his capacity as a CPA for Anderson and Fauss to further Zwygart's interest as a stockholder in the business entities, and that Zwygart used information gained from income tax returns he prepared for Fauss to further his own interest as a shareholder. The complaint alleged that Zwygart disclosed Fauss' confidential tax and financial information without consent, information which Zwygart had obtained in the course of performing professional services.

The Board alleged that Zwygart's conduct arose out of dishonesty, fraud, or gross negligence in the practice of public accountancy, in violation of § 1-137(2). It also alleged that Zwygart's conduct violated the following disciplinary rules:

> Integrity and Objectivity. A licensee shall not in the performance of professional services knowingly misrepresent facts, nor subordinate his judgment to others.
> Title 288, Chapter 5-003.
>
> . . . .
>
> Confidential Client Information. A licensee shall not disclose any confidential information obtained in the course of performing professional services except with the consent of the client.
> Title 288, Chapter 5-005.01.
>
> . . . .
>
> Acts [D]iscreditable. A licensee shall not commit an act that reflects adversely on his fitness to engage in the practice of public accountancy.
> Title 288, Chapter 5-007.01.

In response to the complaint, Zwygart filed an answer alleging that (1) the complaint failed to state a claim for which relief could be granted; (2) the complaint attempted to sanction Zwygart for actions other than those taken "in the practice of public accountancy," see § 1-137(2), and therefore, the Board lacked jurisdiction over the subject matter of the action; and (3) the claims raised in the complaint were barred by the doctrine of laches and the statute of limitations.

PROCEEDINGS BEFORE BOARD

The Board held a hearing pursuant to its statutory authority to take disciplinary action. See § 1-137 and Neb. Rev. Stat. §§ 1-140 to 1-149 (Reissue 1997). The hearing officer adopted the trial court's findings of fact and noted the following relevant facts:

In late 1992, Anderson sold his interest in Norfolk Big Red Bottle Shop, Inc. (Big Red), and Norfolk Avenue Liquor Mart, Inc. (Liquor Mart), to Zwygart and Fauss for $40,000. If a stock transfer had been entered in the corporate minutes, Zwygart and Fauss would each have owned 3,750 shares of Liquor Mart and 1,500 shares of Big Red. However, the stock was never transferred. Anderson believed his interest in the corporations was terminated at that time.

From 1992 until January 1997, Anderson had no involvement in either corporation. Anderson's name no longer appeared on any corporate documents, including those filed with the State of Nebraska and the Internal Revenue Service that were prepared by Zwygart or under his direction. The hearing officer found that Anderson was linked to the corporations only by the failure of the corporations to transfer and deliver Anderson's shares to Fauss and Zwygart and by the pledge of Anderson's personal assets on secured notes of the corporations.

After Anderson was removed from corporate affairs, the business relationship between Fauss and Zwygart became strained. In order to resolve the problems, Fauss and Zwygart agreed to split the management of the businesses, with Fauss' acting as operator and manager of Big Red and Liquor Mart. The parties also agreed as to the servicing of the debts of Big Red and Liquor Mart.

In January 1997, Zwygart paid Anderson $100 for the Big Red shares and $100 for the Liquor Mart shares previously sold by Anderson but not transferred on the corporate books. The hearing officer found that Zwygart also induced Anderson to vote with Zwygart on the assurance that Fauss would be ousted and Anderson's personal obligation on the outstanding debts would be discharged.

Zwygart and Anderson called a special meeting of the board of directors of Big Red and Liquor Mart for January 21, 1997, at which meeting Zwygart was elected as a new officer over the

protest of Fauss. Zwygart then fired Fauss from his employment as manager of Big Red and Liquor Mart. Zwygart and Anderson outvoted Fauss by a margin of 2 to 1 in corporate business. Zwygart and Anderson then called a shareholders' meeting for February 3, despite Fauss' written and verbal objections. At that meeting, Zwygart voted his one-third interest and the one-third interest he had purchased from Anderson. All resolutions concerning corporate business were adopted at the January 21 and February 3 meetings based on the strength of Anderson's vote as a director and Zwygart's vote based on the shares he acquired from Anderson. Thereafter, Anderson again was no longer involved in the affairs of the corporations and Zwygart ran the businesses to the exclusion of Fauss.

The trial court found that Zwygart perpetrated fraud in both the January 21 and February 3, 1997, meetings. Zwygart benefited from this fraud by the acquisition of management of the two businesses, and Fauss was excluded from the two businesses. Anderson was unaffected except for the $200 received from Zwygart. The trial court imposed a constructive trust in favor of Fauss on one-half of the shares of stock in Big Red and Liquor Mart transferred by Anderson to Zwygart in January 1997 and voided all actions of the directors, officers, and shareholders at the January 21 and February 3 meetings.

Before the Board, Zwygart argued that the Board lacked jurisdiction over the subject matter because it was attempting to sanction him for actions other than those "in the practice of public accountancy." See § 1-137(2). Zwygart asserted that he was a shareholder in the corporations, that the corporations were not his clients, and that he was acting in his capacity as a shareholder.

The hearing officer concluded that the facts were sufficient to support the allegations in the complaint and that Zwygart was acting as a CPA during the performance of his duties and obligations on behalf of the corporations, as well as in actions he performed on behalf of Anderson. The hearing officer referred to definitions provided in the Board's rules and regulations:

> **(Practice of Public Accountancy) shall mean the performance or offering to perform by a person holding himself out to the public as a permit holder, for a client**

**or potential client, of one or more kinds of services involving:**

**001.17B:** one or more kinds of management advisory or consulting services, or the preparation of tax returns or the furnishing of advice on tax matters.

**288 Neb. ADMIN. Code Ch. 3 §001.17 (1999).**

Based on the trial court's opinion and testimony given during trial, the hearing officer determined that Zwygart served as the CPA for "all of the individuals and entities involved in this matter" for many years. He acted as a CPA when filing documents with state and federal agencies. The hearing officer determined that Zwygart could not perform CPA duties on behalf of the corporations, Anderson, and Fauss and then suggest that he was merely acting as an agent or stockholder.

[Zwygart] possesses a significant amount of training and education which allowed him to receive his certificate as [a CPA] and was possessed of specific training and skills to perform duties that the other stockholders were unable or untrained to perform. By performing these accounting duties and responsibilities [o]n behalf of these specific business entities and individuals, [Zwygart] was acting in the capacity as a [CPA] and was holding himself out as such.

The hearing officer concluded that Zwygart was dishonest in his dealings with his business partners and that Zwygart committed fraud, as found by the trial court. Zwygart's actions reflected adversely on his fitness to engage in the practice of public accountancy because "honesty, integrity and utmost truthfulness are at the very core of the business relationship which must exist between a [CPA] and his clients." The hearing officer found that Zwygart's conduct in excluding Fauss from the two corporations reflected adversely on Zwygart's fitness to engage in the practice of public accountancy.

The hearing officer found no merit to Zwygart's allegation that the Board's complaint was barred by the doctrine of laches and the statute of limitations. The parties had previously entered into a "consent order," which specifically provided that the Board had jurisdiction over Zwygart and the subject matter of the litigation.

The hearing officer found that the record contained sufficient competent evidence that Zwygart should be disciplined. The hearing officer concluded that Zwygart violated § 1-137(2), which provides for discipline for dishonesty, fraud, or gross negligence in the practice of public accountancy, and that Zwygart violated the Board's rules and regulations by committing dishonesty, fraud, or gross negligence in the practice of public accountancy and by committing acts which reflected adversely on his fitness to engage in the practice of public accountancy.

On September 15, 2003, the Board voted to accept the hearing officer's findings of fact and conclusions of law. The Board found that Zwygart violated § 1-137 and rules and regulations promulgated by the Board and determined that Zwygart should be disciplined by the revocation of his CPA certificate and permit to practice. The order also assessed attorney fees and costs against Zwygart in the amount of $14,693.05.

### PROCEEDINGS BEFORE DISTRICT COURT

Zwygart appealed to the Lancaster County District Court (district court), which affirmed the Board's decision. Upon appeal to this court, the judgment was reversed and the cause remanded for further proceedings because the district court applied the incorrect standard of review for a case pursuant to the Administrative Procedure Act. See *Zwygart v. State*, 270 Neb. 41, 699 N.W.2d 362 (2005).

Upon receipt of this court's mandate, the district court conducted a de novo review of the record made at the administrative hearing. The district court noted that upon learning of the pendency of the *Fauss* cases, the Board notified Zwygart on June 3, 1997, that the Board's enforcement of professional conduct committee was aware of the complaint. Zwygart agreed with the Board's proposal that a consent order be entered which permitted the civil litigation to be completed before the committee proceeded with its investigation of the complaint. A consent order was entered into between Zwygart and the Board in October 1998 which provided that the Board had ongoing personal jurisdiction over Zwygart, that any contested hearing before the Board would not occur until the civil litigation was completed, and that Zwygart waived all defenses on the basis of laches or

statute of limitations. The parties also agreed to be bound by collateral estoppel.

The district court determined that Zwygart was collaterally estopped from contesting the decisions of the trial court and this court in the *Fauss* cases. Based on the trial court's determination that Zwygart committed fraud, the district court found that any evidence submitted to the Board to suggest Zwygart's actions were not fraudulent was irrelevant.

The district court rejected Zwygart's position that the Board could discipline him only if his conduct occurred while he was engaged in the practice of accountancy. The district court upheld the Board's conclusion that Zwygart's dishonesty and the fraud perpetrated on his business associates reflected adversely on his fitness to engage in the practice of public accountancy, in violation of the Board's rules and regulations.

Zwygart claimed the Board lacked jurisdiction because the complaint against him was filed too late, in violation of the statute of limitations. Zwygart acknowledged that he had entered into an agreement with the Board which tolled the statute of limitations and waived any claim of laches. The district court found that Zwygart specifically agreed that any delay would not impair the Board's authority to proceed against him. The only time restriction placed on the Board provided that the Board would dismiss this matter upon conclusion of the litigation or proceed to a contested case hearing within 180 days. Zwygart argued that the litigation was completed when the trial court entered its orders in the *Fauss* cases. The Board argued that the litigation was concluded when the Supreme Court rendered its opinion. The district court determined that the hearing on the complaint before the Board was set within the 180-day period as agreed by the parties. The district court found no merit to Zwygart's complaint that the costs assessed against him were excessive, and it affirmed the Board's decision, with costs assessed to Zwygart. Zwygart appeals to this court.

## ASSIGNMENTS OF ERROR

In summary, Zwygart assigns as error the district court's affirmance of the Board's determination to revoke his license to practice as a CPA, based on the Board's finding that his conduct reflected adversely on his fitness to practice accounting. Zwygart

also argues that the district court erred in applying collateral estoppel, in finding that the statute of limitations had not run, and in affirming the financial sanctions imposed by the Board.

## ANALYSIS

### JURISDICTION

Zwygart appeals from the judgment of the district court which affirmed the action of the Board. A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Wilson v. Nebraska Dept. of Health & Human Servs.*, 272 Neb. 131, 718 N.W.2d 544 (2006). When reviewing such an order, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. See *id.*

The Board is authorized to discipline the holders of certificates and permits who fail to comply with the technical or ethical standards of the public accountancy profession. See Neb. Rev. Stat. § 1-105.01 (Reissue 1997). The Board may adopt and promulgate rules and regulations of professional conduct. Neb. Rev. Stat. § 1-112 (Reissue 1997). The Board may take disciplinary action for any one or any combination of nine enumerated causes set forth in § 1-137. Relevant to this action are § 1-137(2), which allows discipline for "[d]ishonesty, fraud, or gross negligence in the practice of public accountancy," and § 1-137(4), which allows discipline for "[v]iolation of a rule of professional conduct adopted and promulgated by the board under the authority granted by the act."

Zwygart argues that the Board did not have jurisdiction to discipline him because his actions in the *Fauss* cases were not undertaken "in the practice of public accountancy." See § 1-137(2). However, the district court found that Zwygart performed accounting activities for the corporations, Fauss, and Anderson and that Zwygart prepared income tax returns for each of them. The district court found that Zwygart's practice of accounting was intermingled with his conduct as an officer and shareholder of the various corporations.

Zwygart or his accounting firm served as the bookkeeper and accountant for all of the business entities, and Zwygart prepared

the tax returns and filed other regulatory documents on behalf of those entities with the Secretary of State and the Nebraska Liquor Control Commission. Zwygart maintained the financial and legal corporate books and records. Zwygart was Anderson's accountant, and he completed Internal Revenue Service reports for both Anderson and his business. Anderson relied on the advice of Zwygart in the stock transaction at issue in the *Fauss* cases. The evidence was clear that Zwygart held himself out to the public as an accountant who prepared tax returns and provided advice on tax matters. Zwygart submitted billings for professional services over a period of years to the business entities in question.

In *Smith v. State Board of Accountancy of Kentucky*, 271 S.W.2d 875, 876 (Ky. 1954), the Kentucky Court of Appeals reviewed the revocation of the certificate to practice as a CPA of an accountant (Smith) after he was charged with "'[d]ishonesty, fraud or negligence in the practice of public accounting.'" Smith had two lawsuits brought against him by different parties for an accounting, and recovery was obtained against him in each case.

In one case, Smith had been the administrator of an estate and was elected an officer in a corporation whose stock was owned by the estate. The corporation was engaged in leasing and drilling gas wells. Smith undertook management of the gas development interest of the heirs of the estate, charging $200 per month for his services. He also kept the company's accounts.

The court found in *Smith* that the accounts were poorly kept, that reports made to other interested parties were inaccurate and misleading, that funds were handled in an unbusinesslike manner, that the cash balances in the reports did not match those in the bank records, and that Smith commingled his own funds with those of the company.

Smith claimed that he was acting only as agent for the other stockholders and that any dereliction of duty on his part was not in the practice of public accounting. The court stated: "While it is true that some of the services performed by him were not related to public accounting several of them certainly were, and association with a corporation in some other capacity does not relieve [Smith] of his duty to comply with the high standards of public accounting." *Id.* at 877.

In the other lawsuit, Smith was sued after he became a partner in the development of gas wells and charged the partners $60,000 for their share of drilling a particular well. It was later determined in a suit for accounting that the cost had been only $43,000. Smith also charged $4,500 for personal services, which the court said was apparently unjustified. In addition, proper records were not kept and Smith commingled his own funds with those of the partnership. Smith again argued that these actions were those of a businessman in a business venture and not part of the practice of public accounting. The court found it obvious that Smith's qualifications as a CPA were important to his partners and that the books he kept should have been above question. "Certainly the high standards of a [CPA] must be maintained in business transactions where he performs accounting services as a fiduciary and where his counsel is relied upon." *Id.*

The appellate court affirmed the revocation of Smith's certificate, stating:

> The field of public accounting is a specialized one and the legislature has seen fit to regulate it. A certificate as a [CPA] indicates to the public that the person holding such a certificate possesses the highest sort of qualifications and is one in whom may be placed the utmost trust and confidence. The facts in this record show that [Smith] as a [CPA] has failed to live up to well recognized standards. After a full and fair hearing by a competent Board of experts and an excellent circuit judge, we find nothing to indicate that the action of the Board was unjustified.

*Smith v. State Board of Accountancy of Kentucky*, 271 S.W.2d 875, 877 (Ky. 1954).

This court has considered other professional licensure actions. In a case involving a license to practice as a chiropractor, this court noted that state law allows the revocation of a license when the licensee is guilty of "'grossly immoral or dishonorable conduct evidencing his unfitness.'" See *Poor v. State*, 266 Neb. 183, 190, 663 N.W.2d 109, 116 (2003). Gregory Poor had been found guilty in federal court of introducing misbranded and adulterated drugs into interstate commerce. We agreed with the licensing agency that Poor's conduct fell within the plain and ordinary meaning of grossly immoral or dishonorable conduct.

We then turned to the question whether his conviction had a rational connection with his fitness or capacity to practice the profession.

> Chiropractic medicine is a regulated health care profession. Patients necessarily rely upon the chiropractor's honesty, integrity, sound professional judgment, and compliance with applicable governmental regulations. The record shows that Poor introduced misbranded and adulterated drugs into interstate commerce "with the intent to defraud and mislead." . . . We find that the record contains sufficient competent evidence to support the determination of the district court that Poor's federal felony conviction and conduct upon which it was based are rationally connected to Poor's fitness or capacity to practice his profession.

*Id.* at 194-95, 663 N.W.2d at 118 (emphasis omitted).

It is readily apparent that individuals rely upon honesty, integrity, sound professional judgment, and compliance with government regulations when they consult a CPA, even if the CPA may not be specifically acting as an accountant. The actions of Zwygart as a partner in the corporations were rationally connected to his activities as a CPA. Accounting is a regulated profession, and its members are held to standards established by the Board. The Board is authorized by state law to adopt rules to regulate practitioners.

Zwygart complains because the district court referred to several attorney disciplinary actions in reaching its decision to affirm the Board's revocation of his license. The district court stated, "In professional licensure, it is not unusual for conduct outside the practice of the profession to be found to reflect adversely on the licensee's fitness to practice his or her profession."

We find no error in the district court's comparison of attorneys and accountants. Both professions are regulated and bound by certain codes. For attorneys, the Code of Professional Responsibility, which was in effect during the period of time at issue in this case, provided that a lawyer was not to "[e]ngage in any other conduct that adversely reflect[ed] on his or her fitness to practice law." Canon 1, DR 1-102(A)(6). The district court found that Zwygart's practice of accountancy was intermingled with his conduct as an officer and shareholder of the

corporations, but that even if his actions did not occur "while he was practicing accountancy, his conduct clearly 'reflect[ed] adversely' on his fitness to practice accountancy."

The district court considered the trial court's decisions and additional facts submitted to the Board. The district court stated: "The evidence adduced before the Board and Zwygart's arguments attempt to excuse or rationalize his dishonesty. There is evidence in which Zwygart blames his attorney. The fact remains that it is Zwygart who carried out the acts of dishonesty and fraud."

Much of Zwygart's argument relies on his claim that the evidence did not support a finding that his actions were taken while in the practice of public accountancy. However, he seems to ignore that by adopting the hearing officer's findings, the Board determined he was guilty of violating both § 1-137(2), based on dishonesty, fraud, or gross negligence in the practice of public accountancy, and § 1-137(4), violation of a rule of professional conduct. The complaint alleged that Zwygart violated the following: "A licensee shall not commit an act that reflects adversely on his fitness to engage in the practice of public accountancy." This provision does not require that the actions resulting in revocation arise from the practice of public accountancy. Any activity that reflects adversely on a CPA's fitness to engage in public accounting can lead to revocation.

The hearing officer determined that Zwygart's actions related to the corporations in the *Fauss* cases reflected adversely on his fitness to engage in public accounting. The Board agreed and revoked his license. The district court, upon de novo review, also concluded that Zwygart's dishonesty and fraud on his business associates reflected adversely on his fitness to practice as a CPA. We find no error in this holding. It conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. See *Wilson v. Nebraska Dept. of Health & Human Servs.*, 272 Neb. 131, 718 N.W.2d 544 (2006).

### Collateral Estoppel

Zwygart argues that the district court erred in finding that collateral estoppel applied under the facts of this case. Under the doctrine of collateral estoppel, when an issue of ultimate fact

has been determined by a final judgment, that issue cannot again be litigated between the same parties in a future lawsuit. *Eicher v. Mid America Fin. Invest. Corp.*, 270 Neb. 370, 702 N.W.2d 792 (2005). Four conditions must exist for the doctrine of collateral estoppel to apply: (1) The identical issue was decided in a prior action, (2) there was a judgment on the merits which was final, (3) the party against whom the rule is applied was a party or in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Id.*

Zwygart argues that the first and fourth requirements have not been met here. He claims that the question whether the identical issue was decided in a prior action has not been satisfied because any prior finding of fraud was not premised on the condition that it occurred in the practice of public accountancy. He also asserts that because the issues were not the same, there was not an opportunity to fully and fairly litigate the issue in the prior action. He argues that he was not confronted with the possibility of losing his CPA license in the *Fauss* cases.

The district court applied collateral estoppel and stated that the issue was whether the fraudulent conduct described in the *Fauss* cases, "coupled with the additional facts submitted to the Board," established that Zwygart displayed dishonesty, fraud, or gross negligence in the practice of public accountancy or violated one of the Board's rules of conduct.

In October 1998, the parties entered into a consent order. It stated that the Board knew of the *Fauss* cases and that Zwygart consented to the ongoing personal jurisdiction of the Board over him. The order also stated:

> [The] Board and [Zwygart], for purposes of the contested case proceeding regarding the subject of this litigation, agree to be bound by any final stipulation, order, judgment, finding, or adjudication of any relevant fact made in the context of the litigation to the extent provided by Nebraska law pertaining to collateral estoppel, except any dismissal obtained as part of a settlement agreement.

In the consent order, Zwygart agreed to be bound by any final order in the underlying cases.

## STATUTE OF LIMITATIONS

Zwygart claims that the sanctions must be dismissed because the relevant statute of limitations expired before the Board acted. He argues that the statute of limitations for fraud is 4 years and that the cause of action accrues upon discovery of the fraud. Zwygart contends the statute of limitations had run because the trial court entered its initial judgment against Zwygart on August 31, 1998, and the Board did not file its complaint until February 14, 2003.

This assignment of error has no merit. Zwygart agreed to the following:

> [Zwygart] agrees to waive all defenses to subsequent Board action regarding this matter based upon the doctrine of [l]aches, statutes of limitation, or delay that [Zwygart] did not have on the date of this Consent Order. It is agreed that any delay in proceedings resulting from this Order shall not impair the Board's authority to proceed against [Zwygart] regarding the subject matter of the litigation.

Thus, Zwygart expressly agreed not to raise the statute of limitations as a bar to any proceeding by the Board.

In addition, even though the trial court's orders in the *Fauss* cases were entered in 1998, the decision by this court was not entered until September 2002. It was Zwygart who appealed the decision of the trial court in the *Fauss* cases, which extended the time before the Board could proceed. The Board filed its complaint in February 2003, which was well within any statutory limitation period and within the 180-day period agreed to by the parties in the consent order.

## SANCTIONS

Finally, Zwygart assigns as error the district court's affirmance of the sanctions imposed by the Board. The Board found that it had authority under § 1-148(8) to assess attorney fees and other expenses related to the hearing. It assessed a total of $14,693.05 to Zwygart based on the following: (1) fee of court reporter for hearing and transcript—$1,118.50, (2) fee of hearing officer—$1,185, and (3) fees and expenses of counsel for the Board—$12,389.55. The district court reviewed the record de novo and found no merit to Zwygart's complaint that the costs were excessive.

On appeal, Zwygart complains that the Board did not take into consideration the testimony concerning his standing as a good citizen and his accounting practice in Norfolk, Nebraska. He argues that the sanctions are unduly excessive and punitive because of the economic damage he endured prior to the imposition of the sanctions, including the fact that he màde full restitution to Fauss.

Section 1-148(8) provides that the Board has discretion to impose "costs as in ordinary civil actions in the district court, which may include attorney and hearing officer fees incurred by the board and the expenses of any investigation undertaken by the board." Zwygart argues that the statute does not expressly cover fees for the prosecutor. We disagree. The statute includes attorney fees incurred by the Board. The "prosecutor" in this case was an attorney who represented the Board, and his expenses were therefore incurred by the Board. The statute expressly provides for fees as imposed by the Board, and this assignment of error has no merit.

## CONCLUSION

The Board had jurisdiction over Zwygart. The evidence before the district court was sufficient to demonstrate that Zwygart committed fraud while in the practice of public accountancy and that his actions adversely reflected on that practice. Zwygart waived any right to object to the proceedings on the basis of collateral estoppel or statute of limitations. There was no error in the award of fees and expenses as ordered by the Board. The district court correctly affirmed the decision of the Board, and we affirm the judgment of the district court.

AFFIRMED.

GERRARD, J., not participating.