IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

FREEMAN V. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

LORENA FREEMAN, APPELLANT,

V.

NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES AND

CALDER A. LYNCH, DIRECTOR, DIVISION OF MEDICAID

AND LONG-TERM CARE, APPELLEES.

Filed March 26, 2019.   No. A-17-950.

Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed.

Thomas J. Anderson, P.C., L.L.O. for appellant.

Douglas J. Peterson, Attorney General, and Ryan C. Gilbride for appellees.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

BISHOP, Judge.

I. INTRODUCTION

Lorena Freeman appeals from the Lancaster County District Court's order affirming the judgment of the Nebraska Department of Health and Human Services (DHHS), which denied Freeman's application for Medicaid benefits due to her resources exceeding program standards as set forth in the Nebraska Administrative Code. Freeman contends that under federal law, a promissory note at issue should not have counted as an asset for determining her Medicaid eligibility. She also claims DHHS improperly disqualified her initial attorney. We affirm.

- 1 -

## II. BACKGROUND

### 1. FREEMAN'S APPLICATION AND RELATED
### DHHS ADMINISTRATIVE PROCEEDINGS

On March 31, 2015, Freeman applied for Medicaid benefits, listing Rodney Halstead (her attorney at the time) as her authorized representative. When she applied, Freeman was 85 years old, widowed, and had been residing at a nursing home located in Omaha, Nebraska, since February 1. According to the application, Freeman received $971.90 per month in social security income, plus she received $11,927 annually in rental income (later determined to be income from a farm lease in which she had an interest). The application indicates that on March 27, Freeman sold, traded, or gave away $12,300 in cash. She also had $10,506.08 in a checking account, contracts for burial spaces/items, and an interest in land located in Missouri. Significant to this appeal, Freeman paid Halstead $5,547.08 on March 27, and on April 10, Halstead executed a promissory note "FOR VALUE RECEIVED," promising to pay Freeman $4,797.08. The principal amount due, with no interest, was to be paid to Freeman in one installment of $4,236 on April 15, and a final installment of $561.08 on May 1. As later explained by Halstead, the reason the promissory note was for an amount less than what Freeman paid him was due to a miscalculation, and he subsequently paid the difference to Freeman's daughter. He also never disputes that the sole purpose of the promissory note was to qualify Freeman for Medicaid.

In a "Notice of Action" dated July 29, 2015, DHHS denied Freeman's application for "medical coverage" under Medicaid effective March 1. The reason given was that her "Resources Exceed Program Standards." Freeman (through Halstead) filed an appeal with DHHS, claiming the decision was inconsistent with federal Medicaid law, and Nebraska law and regulations. Freeman argued that she should have been determined to be eligible but for the disqualifying transfer; thus, the application should have been denied due to a disqualifying transfer and a penalty assessed for that transfer rather than a finding that Freeman was "over-resourced."

On January 12, 2016, DHHS moved to disqualify Halstead as Freeman's counsel (generally alleging Halstead was a necessary witness for having been the individual to execute the promissory note in dispute). Freeman moved to quash DHHS' motion to remove Halstead as her counsel. Following an administrative hearing on those motions, Calder A. Lynch, the Director of the Division of Medicaid and Long-Term Care for DHHS (Director Lynch), sustained DHHS' motion to disqualify Halstead and overruled Freeman's motion to quash on April 14. Freeman's new counsel entered his appearance in the administrative appeal on May 11.

On June 9 and July 20, 2016, administrative hearings were held, and the following evidence was adduced. State Medicaid regulations state that for the purpose of determining eligibility, "available resources include cash or other liquid assets or any type of real or personal property or interest in property that the client owns and may convert into cash to be used for support and maintenance." 477 Neb. Admin. Code, ch. 21, § 001.03 (2014). A DHHS "Medicaid Lead Worker" testified that at no time during Freeman's application process was Freeman ever under the $4,000 resource limit. The lead worker described certain assets which put Freeman above the limit: a bank account with a balance over $4,000, as well as other resources. The lead worker also discussed that Freeman's bank account showed a balance of $29,102.03 as of March 20, 2015, and by April 5,

the balance was $11,061.23. The lead worker believed that the significant reduction in the balance was the result of Freeman gifting some money, plus paying money to Halstead for the promissory note. DHHS ultimately learned that Freeman also had farm rental income, which they permitted to be placed into a "segregated" bank account and allowed Freeman's lump sum rental payments to be prorated over the course of the year. The lead worker noted that the higher the income a person has, the "higher the share of cost for the nursing home" that person would have to pay.

Regarding Halstead's promissory note, the lead worker testified that DHHS found that the promissory note was invalid because "[i]t does not have equal payments, it's not signed by the lender, and it's not for a permissible purpose, . . . that the purpose of the promissory note is to make [Freeman] resource-eligible." Therefore, the entire $4,797.08 owed to Freeman under the promissory note was determined to be an available asset to Freeman for purposes of eligibility. Halstead testified that the sole purpose of the promissory note was for Medicaid qualification. The State Medicaid Manual, issued by the Social Security Administration, says that an individual must establish to the satisfaction of the State that an asset was transferred for a purpose other than to qualify for Medicaid. The lead worker agreed that even setting aside income from the farm rental payments, and focusing just on the promissory note, Freeman would have been "over-resourced" just based on the promissory note.

On September 18, 2016, Director Lynch issued an order finding that Freeman's resources as of March 31, 2015, included a checking account with a balance of $12,004.95 and a promissory note from April 10 in the amount of $4,797.08. Also recited were the promissory note's general terms, as described previously. The order indicated that an individual had to meet "certain basic requirements, including resource requirements" to be eligible for Nebraska Medicaid, citing 477 Neb. Admin. Code, ch. 21, § 001 (2015). And that to determine eligibility, "available resources" include "cash or other liquid assets, promissory notes, and trust or guardianship funds." It noted Freeman's position that the promissory note should not be included as a resource.

Director Lynch's order stated that the promissory note was entered into between Freeman and Halstead, who at the time was Freeman's counsel. The order pointed out that Halstead had testified that "the note was entered into for the purpose of qualifying [Freeman] for Medicaid and it was intended as a means to convert resources into income." The order stated that the regulations recognized that "a bona fide loan to a client or financially responsible relative is disregarded as a resource," and "[a] bona fide loan is defined as one that must be repaid." "In this case, the maker of the promissory note (Halstead) was not a Medicaid client nor was he a financially responsible relative." Finding those exceptions inapplicable, Director Lynch concluded that the evidence and applicable authority supported DHHS' conclusion that the promissory note funds were a countable resource.

As for Freeman's argument that the promissory note should be excluded as a resource because it had to be repaid, Director Lynch found otherwise, concluding that the evidence established the note "did not bear interest, was entered into with [Freeman's] attorney, and was executed two weeks after [Freeman] applied for Medicaid." According to Director Lynch, "the weight of the evidence clearly demonstrates the loan was a legal fiction designed to convert countable Medicaid resources into income. Mr. Halstead admitted such at the hearing." Director Lynch concluded that DHHS correctly determined that the promissory note should be counted as

a resource. The order went on to state, "Nebraska Medicaid regulations mandate a client must meet resource requirements. To accept [Freeman's] argument about the promissory note would be to frustrate and essentially eviscerate any resource requirement established for the Medicaid program." Further, "[n]o other evidence was presented to demonstrate DHHS otherwise miscalculated [Freeman's] resources." DHHS' action was affirmed.

2. PROCEEDINGS IN DISTRICT COURT

On September 29, 2016, Freeman filed a "Petition for Further Review" of Director Lynch's decision in the district court. A hearing took place on March 24, 2017, at which Freeman was represented by her newer counsel and her initial counsel, Halstead. Freeman (through attorney Halstead) argued there were "three baskets that this promissory note . . . could go into. The first basket is . . . the resource basket . . . the second basket is . . . the fair market value transfer basket, and then the third basket is the disqualifying transfer basket." Freeman said the State put the promissory note into the resource basket, but that the court should "look at the federal rules" as "the Medicaid program is set up on the federal rule system where Nebraska cannot be more restricted [sic] than the federal rules." Freeman contended that to be a "resource," the applicant must have a legal right to the cash or property or the power to convert the asset to cash. Whereas, if there is no ownership interest or no legal right to liquidate or convert an asset to cash, then it is not a "resource." Freeman claimed that the "resources that were transferred for the promissory note and the promissory note itself" were not resources because she did not "own those resources," and they were not in her control. She argued, "So there is no way under federal law that we can put that into the resource basket as the State has argued."

Rather than considering the promissory note as a resource, Freeman suggested that under federal law the promissory note was a "fair market value transfer." She suggested that federal law sets forth three requirements for a promissory note to qualify: (1) the repayment term was actuarially sound, (2) the payments were in equal amounts with no deferral and no balloon payments, and (3) there was a prohibition against cancellation of the note upon the death of the lender (Freeman). Freeman stated that the requirement "at issue here," was the "equal payments." Attorney Halstead explained,

> [I]t was set up as part of the overall strategy that I've used for years under federal law to allow protection of resources under the federal rules. And in this specific instance, because of [sic] the amount that was protected was so small, when the math was done there was only a 1.3 month time frame [Freeman] would be kept off Medicaid. And so when the note was made, there were two payments. . . .
>
> So when we're talking about equal payments, the court needs to recognize that in this situation and probably in most situations, that last payment may be unequal because of mathematical formulas and so forth in doing that.

Alternatively, Freeman argued it was a "disqualifying transfer" and the "rule used by the federal government" is that "if you choose to protect some resources, you have to be willing to be disqualified for some amount of time, and this is how you do it." Freeman further asserted that DHHS "shouldn't have denied benefits because [DHHS] counted [the promissory note] as a

- 4 -

resource to get over the $4,000. [DHHS] should have acknowledged that she was under the [$]4,000 but that money disqualified her for benefits for a[]while." DHHS generally argued the promissory note was a countable asset under federal law, and the undisputed evidence showed that the State Medicaid Manual also mandated that conclusion because the promissory note was "created simply to qualify [Freeman] for Medicaid."

The matter of Halstead's disqualification was also addressed before the district court (by Freeman's newer attorney). It was noted that the State disqualified Halstead because he would need to testify, but they ended up only asking "one essential question," which was whether the transfer was intended to qualify Freeman. It was argued that this was "stipulated . . . from the get-go." It was suggested that "this thing" be remanded back, and the remedy would be to allow Halstead to "be entitled to represent the family and [Freeman] on this."

### 3. DISTRICT COURT'S ORDER

The district court entered an order on August 9, 2017. It found that Freeman complained of the disqualification of Halstead in her brief, "but then admit[ted] that it caused no reversible error in the outcome of the DHHS decision." The court concluded that error without prejudice provided no ground for appellate relief. The court also declined to address an attorney fee assessment argument related to the disqualification because there was only an "oblique reference" to it without any formal motion or authority cited by Freeman.

The district court's order then addressed whether the promissory note was an asset for purposes of determining Freeman's Medicaid eligibility; "The State Medicaid Manual states that an individual must establish to the satisfaction of the State that the asset was transferred for a purpose other than to qualify for Medicaid." The court further noted,

> DHHS determined the promissory note transfer was invalid because the purpose of the note was to make Freeman resource-eligible for Medicaid. Evidence presented at the hearing revealed that the sole purpose of the promissory note was for Medicaid qualification purposes.

The district court next addressed Freeman's argument that DHHS should have applied 42 U.S.C. § 1396p(c)(1)(I) (2012) rather than what Freeman considered to be the "more restrictive" regulations of the Nebraska Administrative Code. The district court noted that DHHS "apparently acquiesce[d]" that federal law controlled. However, each party disputed whether under § 1396p(c)(1)(I) the promissory note transfer counted as an asset for determining Freeman's Medicaid eligibility. The court noted that Freeman transferred assets within the "look-back period" under 42 U.S.C. § 1396p(c)(1)(B), and that Halstead executed the promissory note after Freeman submitted her Medicaid application. The court stated, "The question, ultimately, is whether the money Freeman paid Halstead for the promissory note was an 'asset' under 42 U.S.C. § 1396p(c)(1)(I)." That statutory provision provides that a promissory note is considered an asset unless it: (1) has a repayment term that is actuarially sound, (2) provides for payments to be made in equal amounts, with no deferral or balloon payments made, and (3) prohibits the cancellation of the balance upon the death of the lender. See 42 U.S.C. § 1396p(c)(1)(I).

The district court concluded that under federal law, the promissory note did not fulfill two of the three requirements necessary to be excluded as an asset: there was "a complete lack of evidence of actuarial soundness for the promissory note," and "the note did not provide for payments to be made in equal payments during the term of the loan." On the latter point, the court noted that had there been at least two equal payments followed by a final payment that was a lesser amount, then "Freeman might at least be able to posit a position on this point, but the law specifically requires equal payments, which is plural and must mean, at the very least, more than one payment in the same amount."

The district court further established that the promissory note transfer "would not satisfy Nebraska law which requires . . . that in dealing with promissory notes, they are includable as assets if fair market criteria are not met," and a promissory note cannot meet fair market criteria if the "instrument does not provide for equal monthly or annual payments commencing immediately during the term of the contract." See 477 Neb. Admin. Code, ch. 21, § 001.25A. The district court determined that the promissory note was a countable asset when analyzed under either federal or Nebraska law.

Freeman appeals from the district court's order.

## III. ASSIGNMENTS OF ERROR

Freeman claims, restated, that the district court erred in (1) ruling that there was no reversible error regarding DHHS' disqualification of Halstead as Freeman's counsel and (2) interpreting federal law to conclude that the promissory note counted as an asset.

## IV. STANDARD OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act (APA) may be reversed, vacated, or modified by an appellate court for errors appearing on the record. See *Leon V. v. Nebraska Dept. of Health & Human Servs.*, 302 Neb. 81, 921 N.W.2d 584 (2019). When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Leon V. v. Nebraska Dept. of Health & Human Servs., supra*. An appellate court, in reviewing a district court's judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Id.*

To the extent that the meaning and interpretation of statutes and regulations are involved, an appellate court decides such questions of law independently of the decision made by the court below. *Id.*

## V. ANALYSIS

### 1. ATTORNEY DISQUALIFICATION

Freeman was represented by counsel at the two administrative hearings on her denied Medicaid application, albeit by different counsel than her initial counsel, Halstead. When Freeman complained to the district court about Halstead's disqualification, she admitted that it caused no reversible error in the outcome of the agency's decision. The district court determined that error

without prejudice provided no ground for appellate relief, citing to *Betterman v. Department of Motor Vehicles*, 273 Neb. 178, 728 N.W.2d 570 (2007) and Neb. Rev. Stat. § 84-917 (Reissue 2014).

Freeman again takes issue with Director Lynch's disqualification of Halstead as her counsel. However, both parties acknowledge the issue is now moot. Recently, the Nebraska Supreme Court accepted Halstead's voluntary surrender of his license to practice law (which Halstead filed in February 2018) and ordered Halstead immediately disbarred from the practice of law in the State of Nebraska. See *State ex rel. Counsel for Dis. v. Halstead*, 300 Neb. 69, 912 N.W.2d 240 (2018). Both Halstead's voluntary surrender of his license and the following entry of the judgment of disbarment of Halstead occurred after the district court issued its order in this case in 2017. Any alleged error concerning the disqualification of Halstead as Freeman's counsel is a moot question that rests upon facts and rights that no longer exist due to Halstead's disbarment. We will not address the merits of a moot question. See *Nesbitt v. Frakes*, 300 Neb. 1, 911 N.W.2d 598 (2018).

Nevertheless, Freeman requests we consider the issue under a public interest exception. It is true that an appellate court may choose to review an otherwise moot matter under the public interest exception if it affects the public interest or when other rights or liabilities may be affected by its determination. See *id*. This exception requires a consideration of the public or private nature of the question presented, the desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem. *Id*.

Freeman argues the public interest exception applies because the hearing was not conducted by a "true impartial judge, but rather a party to the action, per se [referring to Director Lynch]." Brief for appellant at 14. As to the present case, Freeman essentially asserts the disqualification was the result of a tactical reason of DHHS' counsel to move to disqualify Halstead. She argues that the "problem of an opponent disqualifying counsel is subject to future recurrence," and that there is "no check and balance in the procedure in this case that [Director Lynch] makes that decision unilaterally." *Id*. at 15.

Neb. Ct. R. of Prof. Cond. § 3-503.7(a) provides that a lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless (1) the testimony relates to an uncontested issue, (2) the testimony relates to the nature and value of legal services rendered in the case, or (3) disqualification of the lawyer would work substantial hardship on the client. The key is the evidence showing that the lawyer is a necessary witness. *Beller v. Crow*, 274 Neb. 603, 742 N.W.2d 230 (2007), *overruled on other grounds, Heckman v. Marchio*, 296 Neb. 458, 894 N.W.2d 296 (2017). There was no question that Halstead was a necessary witness since he personally issued the promissory note being contested for the admitted purpose of qualifying Freeman for Medicaid; both parties called Halstead as a witness on this issue. We see no merit to addressing this argument further under the public interest exception.

### 2. OVERVIEW OF MEDICAID PROGRAM

The Medicaid program provides joint federal and state funding of medical care for individuals whose resources are insufficient to meet the cost of necessary medical care. *Smalley v. Nebraska Dept. of Health & Human Servs.*, 283 Neb. 544, 811 N.W.2d 246 (2012). The program

provides federal financial assistance to states that choose to reimburse certain costs of medical treatment for needy persons. See *id.* A state is not obligated to participate in the Medicaid program; however, once a state has voluntarily elected to participate, it must comply with standards and requirements imposed by federal statutes and regulations. *Id*. Nebraska elected to participate in the Medicaid program when it enacted the Medical Assistance Act. *Smalley v. Nebraska Dept. of Health & Human Servs., supra*. See, also, Neb. Rev. Stat. §§ 68-901 to 68-991 (Reissue 2018) (current Medical Assistance Act). DHHS is responsible for administering the program in this state. *Smalley v. Nebraska Dept. of Health & Human Servs., supra*. Under federal law, a state participating in the Medicaid program must establish resource standards for the determination of eligibility. *Wilson v. Nebraska Dept. of Health & Human Servs.*, 272 Neb. 131, 718 N.W.2d 544 (2006). These standards must take into account only such income and resources as are available to the applicant or recipient, as determined in accordance with standards prescribed by the Secretary of the U.S. Department of Health and Human Services. *Id*.

In appeals involving individual applicants for public assistance benefits, the one seeking public assistance has the burden of proving entitlement thereto. See *Sunrise Country Manor v. Neb. Dept. of Soc. Servs.*, 246 Neb. 726, 523 N.W.2d 499 (1994). When challenging the decision of an administrative agency, the presumption under Nebraska law is that the agency's decision was correct, with the burden of proof upon the party challenging the agency's actions. *Gridiron Mgmt. Group v. Travelers Indemnity Co.*, 286 Neb. 901, 839 N.W.2d 324 (2013).

### 3. PROMISSORY NOTE

The facts of this case are not disputed; rather, Freeman assigns error to the district court's interpretation and application of the law in reaching its conclusion regarding the promissory note. To the extent that the meaning and interpretation of statutes and regulations are involved, an appellate court decides such questions of law independently of the decision made by the court below. *Leon V. v. Nebraska Dept. of Health & Human Servs.*, 302 Neb. 81, 921 N.W.2d 584 (2019). We agree with the district court that based on either federal or state law the promissory note was a countable resource in determining Freeman's Medicaid eligibility.

### (a) Federal Law

When Freeman applied for Medicaid benefits, 42 U.S.C. § 1396a(a)(18) (2012) required that a state plan for medical assistance must comply with the provisions of § 1396p with respect to the transfers of assets. In relevant part, 42 U.S.C. § 1396p(c)(1)(A) stated: "In order to meet the requirements of this subsection for purposes of [§] 1396a(a)(18) . . . the State plan must provide that if an institutionalized individual . . . disposes of assets for less than fair market value on or after the look-back date . . . the individual is ineligible for medical assistance for [nursing facility] services." See, also, 42 U.S.C. § 1396p(c)(1)(C)(i)(I) (2012). The look-back period is generally 36 months, except for a 60-month look-back period for payment from certain trusts. See *Wilson v. Nebraska Dept. of Health & Human Servs., supra.* In this case, no one challenges that Freeman was an institutionalized individual under the statute; she was residing in a nursing home. Nor does anyone dispute that Freeman transferred $5,547.08 to Halstead on March 27, 2015, and then applied for Medicaid benefits on March 31. Accordingly, these funds fell into the look-back period,

and unless they were otherwise qualified to be excluded, they would be counted as assets in determining Freeman's Medicaid eligibility.

In order to qualify for Medicaid medical care benefits in March 2015, Freeman needed to reduce her available resources to fall within an "established maximum" limit (according to the DHHS lead worker, the amount applicable here was $4,000). The reason Freeman's available resources were substantial in March 2015 was in part due to a bi-annual farm rent payment she received. This matter was resolved, with DHHS allowing a farm rental payment of $7,500 made in March to be moved into a segregated account; this allowed the rental income to be prorated over a 6-month period. However, according to the lead worker, even eliminating the farm rental funds from the equation, Freeman was still above the maximum limit because of Halstead's promissory note, which the department found to be invalid. Freeman maintains, as she did on appeal to the district court, that federal law is controlling of the issue pursuant to a proposition from *Wilson v. Nebraska Dept. of Health & Human Servs., supra.* See *id.* (to extent that state regulations conflict with federal statutes, federal provisions prevail). She generally argues that the note met all elements of 42 U.S.C. § 1396p(c)(1)(I), thereby allowing it to be excluded as an asset.

As the district court stated, "The question, ultimately, is whether the money Freeman paid Halstead for the promissory note was an 'asset' under 42 U.S.C. § 1396p(c)(1)(I)." Section 1396p(c)(1)(I) provides that the term asset "includes funds used to purchase a promissory note" unless such note fulfills all three of the following requirements: (i) it has a "repayment term that is actuarially sound (as determined in accordance with actuarial publications of the Office of the Chief Actuary of the Social Security Administration)"; (ii) provides for "payments to be made in equal amounts during the term of the loan, with no deferral and no balloon payments made"; and (iii) prohibits the "cancellation of the balance upon the death of the lender." If those requirements are not met, then the value of such note is "the outstanding balance due as of the date of the individual's application for medical assistance for [nursing facility] services." See *id.*

Freeman argues that the promissory note met all three exclusionary requirements of § 1396p(c)(1)(I). We agree that the promissory note meets the third requirement, 42 U.S.C. § 1396p(c)(1)(I)(iii), because the note's terms stated it was "non-cancelable upon the death of [Freeman]." But, like the district court, we disagree that the note met the other two requirements.

As to the first requirement, Freeman argues that "[b]y common definition, a financial instrument is actuarially sound when it is for a time period less than a person's life," and that Freeman "had a life expectancy of more than two months." Brief for appellant at 23. However, as the district court found, there was no evidence of how the note's repayment term was actuarially sound as required by § 1396p(c)(1)(I)(i). That provision unambiguously states that actuarial soundness is to be determined by "actuarial publications of the Office of the Chief Actuary of the Social Security Administration." See *id.* No actuarial publications are referenced in Freeman's appellate brief nor was any such publication made part of our record. In appeals involving individual applicants for public assistance benefits, the one seeking public assistance has the burden of proving entitlement thereto. See *Sunrise Country Manor v. Neb. Dept. of Soc. Servs., supra.*

With regard to the second requirement, 42 U.S.C. § 1396p(c)(1)(I)(ii), Freeman accurately asserts that there were no deferral or balloon payments under the promissory note terms. But as

the district court pointed out, there "were only two payments under the note, and they were not equal amounts." One payment was for $4,236, with the following payment for $561.08. Freeman argues that "[t]he fact that a last payment is not the same as the other payments should not be deemed an issue, as it's typical for installment notes to have the last payment be some fraction of the others." Brief for appellant at 23. Even accepting that assertion as true, we nevertheless agree with the district court that the statutory language itself contemplates at least two equal payments before a possible final unequal payment based upon the plain language of the statute itself. Absent a statutory indication to the contrary, we give words in a statute their ordinary meaning. *Project Extra Mile v. Nebraska Liquor Control Comm.*, 283 Neb. 379, 810 N.W.2d 149 (2012). The statute says that the promissory note must provide for "payments to be made in equal amounts during the term of the loan." § 1396p(c)(1)(I)(ii). It does not restrict the number of payments under the terms of a promissory note, but it does require payments (plural, so more than one) of equal amounts. See *id*. The two unequal payments due under Halstead's promissory note did not fulfill the requirement of § 1396p(c)(1)(I)(ii).

Because the promissory note did not comport to either § 1396p(c)(1)(I)(i) or § 1396p(c)(1)(I)(ii), it could not be excluded as an available resource. Therefore, the balance due on promissory note had to be considered an asset in determining Freeman's Medicaid eligibility. The district court's decision on this issue conforms to the law and is supported by competent evidence.

(b) Nebraska Medicaid Regulations

Even when analyzing whether the promissory note could be excluded as an asset under the relevant state regulations found in 477 Neb. Admin. Code, ch. 21 (2014), our conclusion is the same. (We note that in the current version of Title 477 of the Nebraska Administrative Code, regulations pertinent to determining resources are now located in Chapter 23, whereas in the version applicable at the time Freeman applied for benefits, they were located in Chapter 21.) When Freeman applied for Medicaid benefits, promissory notes were an example of a "resource" under 477 Neb. Admin. Code, ch. 21, § 001.01, and according to 477 Neb. Admin. Code, ch. 21, § 21-001.16, the maximum available resources an applicant could own and still be eligible for a "one member unit" was $4,000. "If the total equity value of available non-excluded resources exceeds the maximums specified . . . the client(s) is ineligible. Resources must be below the maximum resource level for one day in the month in order for the client to be eligible for that month." *Id*. Notably, 477 Neb. Admin. Code, ch. 21, § 001.24 prohibited giving away resources in order to "establish Medicaid" if the client was in a medical institution or receiving waiver services; evidence adduced in the present case established that Freeman was residing in a nursing home and the very purpose of Freeman's transfer of funds and resulting promissory note was to become Medicaid eligible.

Under 477 Neb. Admin. Code, ch. 21, § 001.25A, a deprivation of resources occurs when an asset is reduced or eliminated for less than fair market value, and this includes promissory notes "for less than fair market value and not enforced [sic]." Among other things, the "criteria for fair market value" were not met in Freeman's case because the promissory note did "not provide for equal monthly or annual payments commencing immediately during the term of the contract." 477

Neb. Admin. Code, ch. 21, § 001.25B2. Therefore, as the district court recognized, Freeman's promissory note failed to meet Nebraska's fair market criteria because its terms did not provide for equal payments (whether monthly or annually). Accordingly, the result was the same under either federal law or state regulations: Halstead's promissory note did not meet the requirements to be excluded as an asset, and it was therefore properly counted as an available resource. As a consequence, Freeman was not eligible for the medical assistance benefits she sought.

### (c) Due Process

As a final matter, we note that Freeman argues about a "violation of procedural due process" that "turn[ed] into substantive due process for the harm caused" by Director Lynch's decision. Brief for appellant at 20. We find that this argument was not properly raised. The issue was neither presented to nor ruled on by DHHS or the district court. When an issue is raised for the first time in an appellate court, it will be disregarded because the district court cannot commit error in resolving an issue never presented and submitted to it for disposition. See *Orchard Hill Neighborhood v. Orchard Hill Mercantile*, 274 Neb. 154, 738 N.W.2d 820 (2007).

### VI. CONCLUSION

For the reasons set forth above, we affirm the judgment of the district court.

AFFIRMED.